Story, Justice,
 

 delivered the opinion of the court.—
 

 ⅛ a writ of error to the district *court of Louisiana. The suit was brought by Mr. Webb, as indorsee, against Mr. Nicholls, as indorser of a promissory note, dated the 15th of January 1819, and made by Thomas H. Fletcher, for the sum of $4880, payable to Nicholls or order, at the Nashville Bank, and indorsed by Nicholls, by his agent, to the plaintiff. The note became due on the 18th of July, which being Sunday, the note, of
 
 *145
 
 course, was payable on the preceding Saturday. The cause came on for trial upon petition and answer, according to the usual course of proceedings in Louisiana, the answer setting up, among other things, a denial of due demand and notice of non-payment; and upon the trial, the jury returned a verdict for the plaintiff. The court, thereupon, ascertained the sum due, and entered judgment for the plaintiff, according to what is understood to be the usual practice of that state.
 

 Several questions have been argued at the bar, which may be at once laid out of the case, since they do not arise upon the record ; and we may, therefore, proceed to examine that alone upon which any judgment was pronounced in the court below.
 

 From the issue in the cause, the burden of proof of due demand of payment, and due notice of the non-payment to Nicholls, rested on the plaintiff. It appears, that the demand was made, and notice given, at the request of the plaintiff, by one Washington Perkins, a notary-public, who died before the trial. The original protest was annexed to the plaintiff’s petition, and contained the usual ^language in this instrument, stating a demand, and refusal of payment, at the Nashville Bank, on the 17th of July, the 18th being Sunday, and that he, the notary,
 
 “
 
 duly notified the indorsers of the non-payment.” Among other evidence to support the plaintiff’s case he offered this protest, together with the deposition of Sophia Perkins, the daughter of the notary. She stated, in her deposition, that her father kept a regular record of his notarial acts, and uniformly entered, in a book kept by himself, or caused the deponent to do it, exact copies of the notes, bills, &c.; and in the margin opposite to the copy of the protest made memoranda, after notification to indorsers, if any, of the fact of such notification, and the manner ; and that his notarial records had been, ever since his death, in the house where she lived. And to her deposition, she annexed, and verified as true, a copy of the protest in this case. The copy of the protest states the demand (most probably by mistake) to have been made on the 19th, instead of the lVth of July 1819, and contains a memorandum on the margin : “Indorser duly notified in writing, 19th of July 1819, the last day of grace being Sunday, the 18th. Washington Perkins.” In other respects the protest is the same in form as that annexed to the petition. To the introduction of this deposition, as well as of the protest, as evidence, the defendant, Nicholls, objected, and his objection was overruled by the court, and the papers were laid before the jury. A bill of exceptions was taken to the decision of the court in so admitting this evidence ; and the sole ’^question now before us, is, whether that decision was right. What that evidence might legally conduce to prove, or what its effect might be, if properly admitted, is not now a question before us. It was left to the jury to draw such inferences of fact as they might justly draw from it; and whether they were right or wrong in their inferences, we cannot now inquire.
 

 It does not appear, that, by the laws of Tennessee, a demand of the payment of promissory notes is required to be made by a notary-public, or a protest made for non-payment, or notice given by a notary to the indorsers. And by the general commercial law, it is perfectly clear, that the intervention of a notary is unnecessary in these eases. The notarial protest is not, therefore, evidence of itself, in chief, of the fact of demand, as it would be
 
 *146
 
 in cases of foreign bills of exchange ; and in strictness of law, it is not an official act. But we all know, that, in point of fact, notaries are very commonly employed in this business ; and in some of the states, it is a general usage so to protest all dishonored notes, which are lodged in, or have been discounted by the bank. The practice has, doubtless, grown up from a sense of its convenience, and the just confidence placed in men who, from their habits and character, are likely to perform these important duties with punctuality and accuracy. We may, therefore, safely take it to be true, in this case, that the protesting of notes, if not strictly the duty of the notary, was in conformity to general practice, and was an in which he was usua% engaged. If *he had been alive at the trial, thex-e is no question that the protest could not have been given in evidence, except with his deposition, or personal examination, to support it. His death gives rise to the question, whether it is not, connected with other evidence, and particularly with that of his daughter, admissible secondary evidence for the purpose of conducing to prove due demand and notice,
 
 (a)
 

 The rules of evidence are of great importance, and cannot be departed from, without endangering private as well as public rights. Courts of law are, therefore, extremely cautious in the introduction of any new doctrines of evidence, which trench upon old and established pi’inciples. Still, however, it is obvious, that as the rules of evidence are founded upon general interest and convenience, they must, from time to time, admit of modifications, to adapt them to the actual condition and business of men, or they would work manifest injustice; and Lord ElleitboROTigh has very justly observed, that they must expand according to the exigencies of society.
 
 (Pritt
 
 v.
 
 Fairclough,
 
 3 Camp. 305.) The present case affords a striking proof of the coi-rectness of this remark. Much of the business of the commercial world is done through the medium of bills of exphange and promis-soi’y notes. The rules of law requii-e, that *due notice and demand should be pi’oved, to charge the indorser. What would be the consequence, if, in no instance, secondary evidence could be admitted, of a nature like the present ? It would matei-ially impair the negotiability and circulation of these important facilities to commerce, since few persons would be disposed to risk so much property upon the chance of a single life ; and the attempt to multiply witnesses would be attended with serious inconveniences and expenses. There is no doubt, that, upon the • principles of law, protests of foreign bills of exchange are admissible evidence of a demand upon the drawee ; and upon what foundation does this doctrine rest, but upon the usage of merchants, and the universal convenience of mankind ? There is not even the plea of absolute necessity to justify its introduction, since it is equally evidence, whether the notary be living or dead. The law, indeed, places a confidence in public officers; but it is here extended to foreign officers acting as the agents and instruments of private parties.
 

 The general objection to evidence, of the character of that now before
 
 *147
 
 the court, is, that it is in the nature of hearsay, and that the party is deprived of the benefit of cross-examination. That principle also applies to the case of foreign protests. But the answer is, that it is the best evidence the nature of the case admits of. If the party is dead, we cannot have his personal examination on oath ; and the question then arises, whether there shall be a total failure of justice, or secondary evidence shall be admitted to prove *facts, where ordinary prudence cannot guard us against the effects of human mortality ? Vast sums of money depend upon the evidence of notaries and messengers of banks ; and if their memoranda, in the ordinary discharge of their duty and employment, are not admissible in evidence after their death, the mischiefs must be very extensive.
 

 But how stand the authorities upon this subject ? Do they as inflexibly lay down the general rule, as the objection seems to imply ? The written declarations of deceased persons, and entries in their books, have been, for a long time, admitted as evidence, upon the general ground, that they were made against the interest of the parties. Of this nature are the entries made by receivers of money charging themselves, rentals of parties, and bills of lading signed by masters of vessels. More than a century ago, it was decided, that the entries in the books of a tradesman, made by a deceased shopman, were admissible as evidence of the delivery of the goods, and of other matters there stated within his own knowledge.
 
 Price,
 
 v.
 
 Lord Torrington,
 
 1 Salk. 285 ; s. c. 2 Ld. Raym. 373. So, in an action on a tailor’s bill, a shop-book was allowed as evidence, it being proved, that the servant who wrote the book was dead, and that this was his hand, and he was accustomed to make the entries.
 
 Pittman
 
 v.
 
 Maddox,
 
 2 Salk. 690. In the case of
 
 Higham
 
 v.
 
 Ridgeway
 
 (10 East 109), it was held, that the entry of a midwife in his books, in the ordinary course of his *business, of the birth of a child, accompanied by another entry in his ledger, of the charge for the service, and a memorandum of payment at a subsequent date, was admissible evidence of the time of the birth. It is true, that Lord Ellenbobottgh, in giving his own opinion, laid stress upon the circumstance, that the entry admitting payment was to the prejudice of the party, and therefore, like the case of a receiver. But this seems very artificial reasoning, and could not apply to the original entry in the day-book, which was made before payment; and even in the ledger the payment was alleged to have been made six months after the service. So that, in truth, at the time of the entry, it was not against the party’s interest. And Mr. Justice Le Blanc, in the same case, after observing, that he did not mean to give any opinion as to the mere declarations or entries of a midwife who is dead, respecting the time of a person’s birth, being made in a matter peculiarly within the knowledge of such a person, as it was not necessary then to determine that question, significantly said, “I would not be bound at present to say, that they are not evidence.”
 

 In the recent case of
 
 Hagedorn
 
 v.
 
 Reid
 
 (3 Camp. 379), in a suit on a policy of insurance, where a license was necessary, the original not being found, it was proved, that it was the invariable practice of the plaintiff’s office (he being a policy-broker), that the clerk, who copies any license, sends it off by post, and makes a memorandum on the copy, of his having done so; and a copy of the license in question was produced from the plaintiff’s letter-book, in the handwriting !liof a deceased clerk, with a
 
 *148
 
 memorandum on it, stating, that the original was sent to Doorman ; and a witness, acquainted with the plaintiffs mode of transacting business, swore, that he had no doubt the original was sent, according to the statement in the memorandum. Lord Ellenboeough held this to be sufficient evidence of the license. And it
 
 Pritt
 
 v.
 
 Fairclough
 
 (3 Camp. 306), the same learned judge held, that the entry of a copy of a letter in the letter-book of a party, made by a deceased clerk, and sent to the other party, was admissible in evidence, the letter-book being punctually kept, to prove the contents of the letter so sent. And he observed, on that occasion, that, if it were not so, there would be no way in which the most careful merchant could prove the contents of a letter, after the death of his entering clerk. The case of
 
 Welsh
 
 v.
 
 Barrett,
 
 which has been cited at the bar from the Massachusetts reports (15 Mass. 381), is still more directly in point. It was there held, that the memoranda of a messenger of a bank, made in the usual course of his employment, of demands on promisors, and notices to indorsers, in respect to notes left for collection in the bank, were, after his decease, admissible evidence to establish such demands and notices. And the learned chief justice of the court, on that occasion, went into an examination of the grounds of the doctrine, and put the very case of a notarial demand and protest of notes, which had been suggested at the bar as a more correct course> as 11 ot *distinguishable in principle, and liable to the same objections as the evidence then before the court.
 

 We are entirely satisfied with that decision, and think it is founded in good sense, and public convenience. We think it a safe principle, that memoranda made by a person, in the ordinary course of his business, of acts or matters which his duty in such business requires him to do for others, in case of his death, are admissible evidence of the acts and matters so done. It is, of course, liable to be impugned by other evidence ; and to be encountered by any presumptions or facts which diminish its credibility or certainty.
 
 A fortiori,
 
 we think the acts of a public officer, like a notary-public, admissible, although they may not be strictly official, if they are according to the customary business of his office, since he acts as a sworn officer, and is clothed with public authority and confidence. It is, therefore, the opinion of the court, that the evidence excepted to in this case was rightly admitted.
 

 The variance between the copy, and the original protest, as to the time of the demand, might have been explained to the satisfaction of the jury at the trial; but it forms no ground upon which this court is called upon to express any opinion.
 

 Judgment affirmed, with costs.
 

 (a)
 

 By the French law, inland bills of exchange and promissory notes, as well as foreign bills, are required to be protested; and the protest is the only evidence of demand, and refusal of payment, and notice of non-payment. Code de Commerce, liv. 1, tit. 8, art. 187, 175.