## JONATHAN SHOVE *versus* CALEB WILEY.

Evidence that the indorser of a note was frequently at a certain bank, transacting
business there, and that he frequently paid notes there, was *held* sufficient proof
of his being conversant with the usage of the bank to give notice to promisors to
pay at the bank, instead of sending the notes to them and demanding payment.

A book kept by a bank, in which a clerk regularly entered certificates of his having
given notices to the makers and indorsers of promissory notes, taken in connexion
with his testimony that it was his practice to carry the notices personally to the
house or place of business of the parties, and that he has no doubt they were car-
ried as usual, in the case of a certain note mentioned in the book, though he has no
recollection in relation to such note, is competent and sufficient evidence to prove
that notices were so given in the particular case.

Where such clerk produced a printed form, in common use, and testified to his be-
lief that the notices in question were in the same form, it was *held* to be competent
and sufficient evidence of this fact.

THIS was an action, commenced on the 7th of September,
1835, by the indorsee of a promissory note made by William
B. Breed, to the defendant or order, and by him indorsed,
dated the 11th of November, 1828, for $ 120, payable in
ninety days.   Pleas, the general issue and the statute of lim-
itations.

At the trial it appeared, that Breed and Wiley were resi-
dents in Lynn at the time when the note became due.

E. S. Davis testified, that on the 12th of February, 1829,
he was a clerk in the Lynn Mechanics Bank ; that by referring
to the records of the bank he finds the following notice entered
by himself, viz. "Lynn Mechanics Bank, Feb. 12, 1829.
I this day notified Wm. B. Breed, drawer, and Caleb Wiley,

indorser, on a note of 120 dollars, due this day, the last of grace. Attest, E. S. Davis"; that it was his practice to carry the notices himself to the residence or place of business of all the parties resident in town, and he had no doubt that notices of the non-payment of this note were carried as usual, as he was very careful to notify the parties and to make a record of it ; that he could not recollect any thing in relation to this particular note, but he believed he did not fail to notify the parties in any case ; that he always left Wiley's notices at his store, and Breed's at his house ; that he carried the notices after the bank closed and entered them the next morning ; that he generally wrote the records on the day that the note was due, and signed them after he had carrried the notice ; that the bank had a form of notice printed, with blanks for the date, amount and name, and he supposed this form was used in respect to the note in question ; that it was not the practice of the bank to present the note to the promisor on the day the note became due, before notifying the indorser ; that he thought the defendant was conversant with the usages of the bank ; that at the time when these notices were given, the defendant was frequently at the bank and had notes becoming due there.

J. W. Proctor testified that on the 1st of February, 1834, the plaintiff requested the defendant to pay the note ; and that the defendant admitted that he indorsed it, and said that if the plaintiff could prove that he had been duly notified, he would pay it.

One Chase testified, that the Lynn Mechanics Bank was the only bank in Lynn in 1828 ; that the defendant did a portion of his business there, but he did most of it at a bank in Salem ; that the witness recollected several instances of notes coming to the bank in Lynn, in which the defendant was interested ; that he had frequently met the defendant at the bank, paying notes and transacting business there ; whether as indorser or not, the witness could not say, but he frequently took up notes there.

The defendant consented to a default, the case to stand as if the jury had given a verdict for the plaintiff; and if upon the evidence such a verdict could be sustained, judgment was

Shove
*v.*
Wiley.

Nov. 9th.

Nov. 15th.

to be rendered for the plaintiff on the default : otherwise the plaintiff was to become nonsuit.

*Stickney*, for the defendant.

*Choate* and *Proctor*, for the plaintiff.

SHAW C. J. delivered the opinion of the Court. In assumpsit against the defendant as the indorser of a promissory note, two issues were tried, the one the general issue, the other upon the statute of limitations. To support the latter, a new promise within six years, was relied upon. The proof being clear, that the defendant admitted that he indorsed the note, and promised to pay it, if the holder could prove that he the defendant was legally notified of the non-payment by the promisor, a fact which the plaintiff must prove, in order to charge the defendant at all as indorser, the same proof which will warrant a judgment against the defendant, on the general issue, will take the case out of the statute of limitations.

The question then upon both grounds is, whether the evidence detailed in the report is competent and sufficient to prove a demand on the promisor and notice to the indorser.

In the first place, we are of opinion, though the testimony is not very full upon that subject, that where the parties to a note were inhabitants of Lynn, as the promisor and indorser both were, the Lynn Mechanics Bank were accustomed to give notice to the promisor to pay at the bank, instead of sending the note to him ; and that the promisor and indorser on this note were so far conversant of the custom of the bank, by transacting business there, that their assent to it may be presumed.

The case then depends upon the common question, whether the plaintiff, who has the burden of proof, has offered that evidence, which is competent and sufficient to prove a demand on the promisor, and notice of non-payment to the indorser.

The witness, who was an officer of the bank, testifies to an entry made by himself, in a book kept at the bank for that purpose, certifying that on the day the note fell due he notified William B. Breed, the drawer, and Caleb Wiley the indorser, of a note corresponding in description with the note in controversy, and the identity of which is not contested. He states that he was at that time clerk in the bank, that it was his prac-

ti&#x0361;e to carry notices personally to the residence or place of
business of all persons in town, and he has no doubt that the
notices were so given in the present instance. He further says,
that he was careful to give the notices and to make a record of
the same. In the cross-examination he states, that he has no
particular recollection of the transaction, independently of the
entry which he finds in the book, but from his habit of trans-
acting business, his mode of keeping the book, and making en-
tries therein, and the purpose of making them, he has no
doubt, that the notices were left.

It is very obvious to remark, that if such evidence is not suf-
ficient, it would be extremely difficult to prove such acts done.
Where bank messengers, notaries and such official persons, do
hundreds and thousands of such acts every year, it would be
contrary to all human experience, to believe that they could re-
call the recollection of each, by force of present memory, even
after looking at a written memorandum ; but the witness may
testify to other facts, which, with the aid of the memorandum,
will afford a very satisfactory inference that the act was done ;
such as his usual practice and habit, his caution never to make
such memoranda unless the acts were done, and his conscious-
ness of the importance and necessity of accuracy, in this par-
ticular. In this respect, it is like the testimony of an attesting
witness to an instrument. He recognizes his handwriting, he
knows he put his hand there, he testifies that he believes he
would not have put it there if he had not seen the instrument
executed, but he has no present recollection of the fact, other
than that derived from the recognition of his handwriting.
Such evidence, we think, it is every day's practice to admit,
and if not controlled by other evidence, a jury might and
ought to infer from it, the fact of execution.

In the first place, we think the book produced in the present
case, containing the entry made by the witness, which enables
him to testify, is not to be treated as a mere private memoran-
dum, used to excite and to stimulate his memory, and enable
him, after seeing it, to recall the actual present recollection of
the fact to be proved. We understand it, from the manner in
which the witness describes it, as a regular book kept by the
bank, for the purpose of inserting therein, certificates or state-

ments of the acts of the officers, done by them in the regular discharge of their official functions, and intended to preserve the evidence of such facts.   The witness speaks of the book, as one of the " records " of the bank, and his entry therein, of the certificate of the act done, as making a " record " of the same.   And in the case of the note in question, the certificate is further authenticated by the signature of the witness.

It is very clear that this is such a book, as would of itself, be evidence of the fact, if the witness were dead ; *Welsh* v *Barrett,* 15 Mass. R. 380 ; or had absconded, having committed an offence which, if he were convicted of it, would disqualify him.   *North Bank* v. *Abbot,* 13 Pick. 465.   It is not a mere memorandum, which can be used only to stimulate the faculty of memory in the witness, and then must be laid aside ; it is to some extent, and for some purposes, evidence, and it is so treated in the cases cited.

Such books are in the nature of registers, and other memoranda of notaries public, which are given in evidence in connexion with testimony as to their usages and practice, whilst living, (*Miller* v. *Huckley,* 5 Johns. R. 375,) and may be offered in evidence after their decease, authenticated by the testimony of clerks or others, who can identify them and testify to their mode of transacting business and keeping registers of their acts.   *Halliday* v. *Martinet,* 20 Johns. R. 168 ; *Nichols* v. *Webb,* 8 Wheat. 337.   Indeed, in regard to promissory notes and inland bills of exchange, in which the protest of a notary public is not of itself necessary or even competent evidence, as by the custom of merchants it is in regard to foreign bills, the protests of notaries public stand on precisely the same footing.   They are formal certificates of the acts of the notaries, authenticated by their signatures and seals, but which are not legal evidence.   But if the notary, with the aid of this formal evidence of an act done by himself, can testify that he believes the act was done, though he has no present recollection of it, it is competent evidence.   *Union Bank* v. *Hyde,* 6 Wheat. 572.   Were it otherwise, inasmuch as a formal protest would be no evidence, if the notary were living, the evidence could only be perpetuated by a deposition in per-

*petuam*, and even that is not usually allowable as evidence in communities and courts governed by the common law, but depends on a statute regulation of our own State.

We think the cases where a witness has been prohibited from testifying by the aid of a memorandum, unless after looking at the memorandum he can testify from present recollection, are those where the memorandum used is not one taken by himself, or is a copy or extract of one not produced. In all such cases he is required to produce the original memorandum. *Doe* v. *Perkins*, 3 T. R. 749. The reason of this is obvious. Where the witness can testify to the facts, only by the aid of the memorandum which he finds, he shall produce the memorandum, because it is, under the circumstances, the best evidence which the case will afford, and better than copies or extracts, which, in reference to such originals, are secondary, and pre-suppose a better in existence, and because the production of the paper will enable the adverse party, on cross-examination, to examine the book or paper itself, so that if the matter testified by the witness, is controlled or qualified by any thing else contained in the memorandum, the adverse party may have the benefit of it.

In a case in South Carolina, the court has gone somewhat further than we find it necessary to go in the present, and have decided, that where a witness made any memorandum at the time, for the purpose of enabling him to testify to it afterwards, and can afterwards say that he made it at the time, for that purpose, and intended to make it conformably to the truth, and now believes that he did, it is competent evidence to go to a jury, though the witness admits that he cannot now testify to the facts, from present recollection, even after refreshing his memory by the use of the paper. Perhaps, in regard to sums and dates, and other minute particulars, where the witness recollects the general course of the transaction, such use is commonly made of a written memorandum in practice, though, perhaps, the witness does not usually declare so explicitly his want of present recollection as the witness did in that case. *State* v. *Rawls*, 2 Nott & M'Cord, 331. Perhaps, in many cases, as that of a tender of a precise amount in dollars and cents, the delivery of a cargo, kept in a memorandum book,

and other similar cases, it would be impossible to prove the facts, without making such use of the memorandum. So of the words spoken in case of slander.

But it is not necessary to decide this general question in the case before us. The present is the case of a regular book kept at a bank, and the entries are the official acts of its clerks, done within the ordinary scope of their authority. In the case of the *Union Bank* v. *Knapp*, 3 Pick. 96, a book of the same description, on proof that the clerk who kept it had become insane, and on proof of his handwriting, was admitted as competent evidence. The book offered in the present case would become admissible, according to the cases cited, on proof of the handwriting of the clerk, in case of his death, insanity or other incapacity to testify ; and we think it is not the less so when authenticated by himself.

As to the form of the notice given, the clerk exhibits a printed form in common use, and testifies to his belief that the notices in question were in the same form ; which is competent, and in the opinion of the Court, sufficient evidence of the fact.

*Judgment for the plaintiff on the default.*