## Barnard *v.* Planters' Bank.

In an action on a promissory note, a notarial record of deceased notary, not verified on oath, is admissible in evidence to prove that the endorsers have had notice.

It is not necessary that the *memoranda* of protest and notice should be entirely in the hand-writing of the notary; it will be sufficient if he sign them.

IN error from the circuit court of the county of Adams.

This was an action of assumpsit which was commenced by the defendants in error against the plaintiff, upon a promissory note, payable to Messrs. McNeil, Wilkinson & Co. for the sum of eighteen hundred and thirty-five dollars and five cents, and which was made payable and negotiable at the Planters' Bank of the State of Mississippi. The note was made by H. C. McNeil, and afterwards endorsed by the maker to R. J. Walker, by him to C. C. Minor, by him to Thomas Barnard, the plaintiff in error, who endorsed it to Chewning, McNeil & Co. who endorsed and delivered it to the Bank. At the maturity of the note, it was protested for non-payment, and suit instituted on the 7th day of February, 1837, against the plaintiff in error on his endorsement.

The bill of exceptions, which was taken at the trial in the court below, states that the defendants in error, after reading to the jury the note sued on and its endorsements, offered in evidence the notarial record of Thomas Redman, who was a notary public at Natchez, at the date of the protest. The record so offered was attached to the original protest and was signed by the notary, but was not certified on oath, as required by the statute of this state. In connection with this testimony, the Bank proved, by Thomas Munce, that the record offered was that of the notary, who was dead; that the body of the protest was made up by the witness, with the exception of one line, and that the signature and initials of the notary were in the hand-writing of the notary; that the words which were written opposite to the names of the endorsers, indicating where the notices were directed, are in the hand-writing of the notary, but that the memoran-

[Barnard *v.* Planters' Bank.]

dum at the foot of the protest was filled up by the witness, and whether it was done by the direction of the notary he did not remember; that the notary sometimes signed similar memoranda before the notices were served, when he had determined where he would send them. The books of the notary were produced at the trial, from which it appeared that his memoranda in other cases were sometimes not signed or dated, and that sometimes there were no memoranda.

The plaintiff in error objected to the introduction of the notarial record as evidence; but the Court overruled the objection, and it was read to the jury, who found a verdict for the defendants in error for $2,246 50.

Montgomery and Boyd, for plaintiff in error.

This case turns on the admissibility of the record of protest and memoranda made by T. Redman, a deceased notary, of the protest of the note and notice of the defendant.

We contend the record was not admissible as evidence, as a notarial record, because it does not conform to the statute which prescribes the duties of the notaries in that particular. See Acts of 1833. Collection of Statutes, 457, sec. 2.

By the statute, it is the duty of the notary to make and certify, *on oath*, a record of what shall have been done by him, by noting whether demand was made, of whom, and where, when the requisite notices have been served, and on whom; where mailed, if such be the case, when mailed, to whom and where directed; and every other fact in any manner touching the same, shall be distinctly stated in the record. A record made in accordance with this statute would be evidence.

The record offered in this case, as evidence, was not made and certified *on oath* by the notary. The acts and doings of the notary, in relation to giving notice, are not noted plainly and distinctly, as required by the statute. Therefore the record was not evidence, as a notarial record.

But it is contended that the record was evidence; being the memoranda of a deceased witness, made in the ordinary course of business. We admit that, under certain circumstances, the memoranda of a deceased person, made in the ordinary course of

business, are admissible to prove the facts stated; but this class of evidence is never admitted without full proof that the deceased was in the regular habit of making such memoranda of business transacted by him, and never made them loosely and carelessly, or on information from others.

The strongest case in any book is the opinion of Justice Story, in 8 Wheaton, 328; and in that opinion the learned Judge candidly admits that he was straining or expanding the rules of evidence, in favor of what appeared to him to be justice. But taking that case to be law, it will not justify expanding the rules of evidence so as to let in this record of Thomas Redman. In the case in Wheaton, the proof was positive that the memorandum, with regard to the time and manner of giving notice, was made in the hand-writing of the deceased, and that the deceased was in the uniform habit of sending such notices by mail, and making memoranda of it after he returned. In this case the testimony is, that Redman was very irregular in his habits of doing business, that he merely signed the body of the record of protest, and made the initials of his name, at the foot of the memoranda, of the time and manner of giving notice; that sometimes he signed such record and memorandum before he did the act mentioned, sometimes afterwards, and sometimes not at all; that the whole of the record, and the substance of the memoranda, were printed or written by a clerk, who says he had the note, but does not believe he had the original protest which was attached to the note. And it was also proved that Redman sometimes signed the record without comparing it with the original, and sometimes without reading it. All of which shows that the evidence was of too uncertain a nature to be admitted to establish any fact. It was more uncertain than hearsay, of the nature of which it partakes, and consequently should not have been admitted.

By comparing the original protest attached to the note with the record kept by the notary, it will be seen they differ widely in form and substance, which shows the notary took no pains to do his business correctly.

McMurran for the defendants.

We contend that reason and authority, that the very case cited

[Barnard *v.* Planters' Bank.]

by the gentleman from 8 Wheaton, and our statute referred to by him, are decidedly in favor of sustaining the decision of the court below. And what is the principle entertained in this leading case cited by the gentleman? Upon what reasoning does the supreme court of the United States base its decision, and what is there in the causes before the court to exclude us from the weight of that authority? Let us refer to it. Nichols *v.* Webb, 8 Wheaton's Rep. 326, 329, 337.

In that case the notary was dead; his record of the protest of the note sued on was produced, with his memoranda with regard to notice, accompanied by the testimony of his daughter as to the identity of the notarial records, and the memoranda of notifications to endorsers being signed by him. This evidence was admitted, although the notarial protest accompanying the note states that payment was demanded on the 17th of the month, and the copy of the protest from the record annexed to the deposition of the witness states that payment was demanded and notice given on the 19th of the month, showing a substantial variance. For notice on the 17th was good, but notice on the 19th was a nullity. Still the court decide that the evidence was correctly admitted to the jury. That it was the best evidence the case admitted of, and that it was for the jury to reconcile these discrepancies, and to decide upon the weight of the testimony. Again—what is the notary's memorandum of notice? A statement of facts simply? No. He decides the law and fact both. He says he " duly notified the endorsers of the non-payment." No statement where or how the notices were sent, no particulars, no facts, but simply that it was legally done ; making the notary the judge of the law of the case, without stating the facts. And yet the gentleman admits that this is good authority, but contends that the evidence in the cases before the court is still more defective. And in what respect are our notarial records still more inadmissible as evidence? There is no discrepancy in any of our records; the dates are such as the law required ; the protest was made at the right time, and the memoranda specify when and how the notifications were served upon the endorsers, upon the defendants in these causes. And all done within the proper and legal time.

These records are complete. There is no defect about them.

9*

[Barnard *v.* Planters' Bank.]

They state the time demand was made, and that notice of non-payment was given before nine o'clock the next morning, in the proper manner; to Dunbar at Natchez, and to Barnard at his office. Take these records and memoranda as they stand, with the proof of Redman's signature, and that the book was the notarial book kept by him, and they present a much stronger case than the authority referred to, or any other. See also 10 East's Rep. 109. 3 Campb. 305. In 15 Mass. Rep. 380, 384, 385, Welsh *v.* Barret, the doctrine laid down and authorities there referred to, are directly applicable to these cases.

But independently of these authorities, our statute of 1833 is conclusive. See revised laws, 456, 457.

And what is. the answer of the opposite counsel to all this? Why, the usual one: That the cases are not analagous, that the authorities do not apply at all upon the present occasion. And why? Because there is proof that the notary, when he had much to do, signed his records without inspecting them or comparing them with the originals; and that he sometimes signed the memorandum of serving notice before he did it, but as Munce states, only when he determined when he would serve them; and that some of the notarial records in the book and memoranda were not signed or filled up at all. And is this proof of the opposite party, to be a bar to the evidence going to the jury at all? Is it to exclude it from their consideration entirely, when courts of justice of late years favor so much the admissibility of evidence, and when our legislature, in regard to the courts commenting upon the evidence, and other enactments, indicate so strongly its sentiments in the same direction? and when the express statute upon this very subject is so explicit? Unquestionably not. The evidence must go to the jury, with any rebutting evidence the opposite party may offer, and the jury must decide upon it. Is the court to decide upon it in the first instance? Is the court to say that it is no evidence at all? Is the court to determine, that because the notary in some cases signed his memoranda before he served the notices, that therefore he did it in these cases? Is the court to decide the fact, that because the notary did not compare some of his notarial records with the original protests, that therefore he did not do it in these cases? And is the court to

determine, that because *other* records are not filled up, and other protests and other memoranda of notifications not signed, that *these* which are regularly filled up and signed, are to be excluded from the consideration of a jury, as evidence?  Surely not.  The jury are the proper judges of the whole matter.  It is their province to weigh all the facts, and to decide in these causes whether notices were duly given or not, under all the circumstances and upon all the testimony.  Suppose the notarial protest of a foreign bill of exchange was offered in evidence, and the opposite party offered evidence to prove that the notary was negligent, that his original protests, and his copies in his books sometimes varied, and that he sometimes signed the one without comparing it with the other.  Would not the court submit the whole matter to the consideration of the jury?  Can the opposite counsel state to me an instance, where an instrument is upon the face of it competent evidence, where the evidence is of itself sufficient, that it will be excluded by the court from the jury?  It may be impugned, it may be contradicted, but it is the jury, not the court, who are to determine that question.  So in these cases, the records are complete upon their face, the memoranda of notifications as signed with the initials of the notary, are admitted to be sufficient of themselves, and I care not how strongly they may be impugned, how severely they may be attacked by other proof, the jury must determine the weight they are entitled to.  Such is the opinion of Chief Justice Parker in the case of Welsh *v.* Barret.  (See top, page 364, margin of page 384, of 15 Mass. Rep.)  See also Judge Story's opinion, as found on page 337, of 8 Wheaton.

Suppose Thomas Redman, the notary, had been alive at the trial of these causes, had appeared as a witness, and had read these notarial records and memoranda of notices to the indorsers, as his testimony, and as all he could recollect or state about his acts in reference to the notes sued, &c.  And suppose the defendant's counsel then proved by him or by other witnesses, all the facts that they have proved, what would be the result?  Would the court say that the testimony was so defective that it could not be legally submitted to the jury?  That it was utterly inadmissible?  Unquestionably not.  So in the present instance we contend that the same rule must be applied.  That our statute alrea-

dy cited, and every principle of law, and every rule of evidence to be found in the authorities read, or in any others, sustains the decisions of the court below, decisions in accordance with experience, and the interests of society, and in furtherance of substantial justice between man and man.

To show that the memoranda may be made by another person, see the case of Price *v.* the Earl of Torrington, 1 Salkeld, 285, given in the case from 15 Mass. (Welsh *v.* Barrett,) page 385.

Mr. Justice TROTTER stated the case, and delivered the opinion of the court.

The only question for this court is, whether this testimony was properly permitted to go to the jury. At common law, any one is authorised to make a protest for the non-acceptance or non-payment of a bill where one is necessary, and when made in the presence of two witnesses, according to the usage of merchants, it is as much evidence of the dishonor of the bill, as if done by a notary. It may be, and now usually is done by a notary public; but it is not on that account, an official act. The protest of a foreign bill of exchange is evidence of a demand upon the drawee, but it has become so, only by the sanction of commercial usage, and the universal convenience of mankind. It is evidence of the demand and non-payment, however, and nothing more. The act of 1822 of this state makes it necessary to protest inland bills, and provides that the protest shall be made by a notary, or a justice of the peace. These are the only changes of the common law which it makes. It attaches no higher character to the protest than it possessed before. The notary is not required to give the notice necessary to charge the drawer or indorsers. He may do so, and upon proof that he has done so, the liability of the parties to the bill is fixed. To give the notice is not part of his official duty, and it must be proven in the usual way. The mention by a notary in his protest, of the manner of the presentment of a bill or note, or a certificate appended to it, stating the manner in which notices were served or forwarded, is therefore not evidence of such facts, *per se.* The act of 1822 was not designed to have that effect. The record of the notary is not made evidence by this statute, and it cannot be construed to afford to it any higher sanc-

tion than it possessed by the common law.   The general oath to discharge his duty, which the notary is required by law to make, has never been held to alter this rule.   The certificate of the notary of the time and mode of serving notices cannot be received in evidence, under any provision of this act.   The act of 1833 goes further, and provides, that when any notary shall protest any bill or note, he shall make and certify on oath, a full and true record of what shall have been done thereon by him, in relation thereto, according to the facts, by noting thereon whether demand was made, of whom and when, when the requisite notices were served and on whom, where mailed, if such be the fact; when mailed; to whom and where directed, and every other fact, &c.

The oath, under the sanction of which, the record of the notary is made conclusive evidence of the facts it states by this statute, is a judicial oath, on which perjury may be assigned, and the statute provides that if any fact shall be falsely stated in his certificate, he shall, upon conviction, be held guilty of perjury, and suffer its penalties.   This is deemed a satisfactory answer to the argument of the counsel for the bank, that this record is admissible, under the act of 1822, without the sanction of the particular oath, required by the act of 1833.

This statute was designed to remove a great inconvenience both to suitors and notaries, which was felt in bringing these officers into court, at a distance from the county of their residence; and the great difficulty of procuring their personal attendance in such cases.   By this act, they cannot be compelled to go beyond the county in which they reside.   Lest, however, in any case mischief should be done by the *ex parte* evidence furnished by the notarial record, either party, who may apprehend danger on that account, may, in case the notary resides out of the county, take his deposition, and he is in all cases subject to be called into court by subpœna, when the suit is pending in the county where he resides.   The record of the notary is thus admissible where his personal attendance cannot be procured, or when the parties in the suit think proper to dispense with it.   It is only conclusive evidence in the absence of the officer.   The difference of the rule, thus created by the statute, from that of the common law is, that the record is conclusive evidence in the life-time of the

notary, under the statute; whereas it is only evidence after his death, by the common law.

As the notary who made the record of protest and memorandum of notices in this case is dead, it is contended that it is now admissible, under the rule just stated, and consequently it is immaterial whether it was or not certified on oath.

The rule is well settled, that an entry or memorandum, by one who knew the fact, and had no interest to falsify it, is admissible after his death, as evidence of that fact. 1st. Starkie's Evid. 70. The case of Higham *v.* Ridgway, 10 East's Rep. 109, was decided on this principle. In Price *v.* Lord Torrington, 1 Salk. 285, it appeared that, according to the usual course of the plaintiff's dealings, the draymen came every night to the clerk of the brewhouse and gave him an account of the beer delivered out, which he set down in a book, to which the draymen set their hands; that the drayman was dead, and that the entry was in his handwriting: it was held good evidence of a delivery. This case has been repeatedly sanctioned by the courts in England and in this country. Thus in the case of Welsh *v.* Barrett, 15th Mass. Rep. 380, the memoranda of demands on the makers, and notices to the endorsers, of notes left in the bank for collection, made by a deceased messenger of the bank, were admitted as evidence of the demand and notice stated in them, upon proof, that they were in his hand-writing.

The principle of these cases was fully adopted in the case of Nichols *v.* Webb, 8 Wheat. 326; where it was determined by the supreme court of the United States, to apply with much stronger force to the books of a deceased notary, which had been regularly kept, and accordingly in that case the memorandum of the notary of the notice to the endorser, made upon the margin of the book, in which his protest was recorded, was held to be admissible to prove the facts it recited. It was an expansion of the rules of evidence, but it was essential to the ends of justice. It is secondary or inferior proof, but it was admitted because the higher and better proof was placed beyond the reach of human tribunals. In the nature of the case, it is the best evidence of which the fact is susceptible. The necessity of the thing therefore admits the testimony, in virtue of an exception from general rules, which has

been sanctioned and adopted to prevent a failure of justice. These adjudications settle the rule, and it only remains for us to enquire whether the notarial record in this case falls within its provisions. It was insisted in the argument that it does not, for two reasons. 1. Because the memorandum does not point out with sufficient certainty, the manner of serving or forwarding the notices to the endorsers, or in other words, it does not state that the requisite notice was given to the plaintiff in error; and 2. Because it is not the memorandum of the notary; the same having been made by his clerk. The language of the memorandum is not as explicit as it should have been, and there might, very justly perhaps, be some diversity of opinion as to its true interpretation. The names of the several endorsers are set down under each other, and opposite the same are written either the name of the endorser, or some town or office. Opposite the name of the plaintiff in error, is written the word, " office," which might indicate, that the notice was sent to him there, or otherwise served at that place, for it was proven that he had an office in Natchez where the note was payable, and where it was protested. This evidence certainly conduced to prove that fact, and the construction of the memorandum was a question for the jury. It was their province to compare the several parts of it with each other, and pronounce the conclusion. The statement made in another and subsequent part of the record, that all notices were duly served on the proper day, and before 9 o'clock in the morning, according to the designation above specified, might well justify the conclusion of the jury, that the notice stated, was given to the plaintiff at his office. But whether it did or not we cannot determine. It is sufficient that it legally conduced to that conclusion, and we cannot disturb the verdict on that ground.

In the case of Nichols *v.* Webb, before noticed, the memorandum attached to the original protest stated, that he, the notary, had " duly notified all the endorsers." Yet this with the other proofs were held to have been proper for the jury. It was therefore properly admitted, unless it is shown that it was not the act of the notary himself. The witness, Munce, stated that the body of the protest was filled up by himself, except one line, but that the name of the notary is in the hand-writing of the notary him-

[Barnard *v.* Planters' Bank.]

self. That the body of the memorandum was also made by the witness, except the words opposite the names of the endorsers, which are in the hand-writing of the notary. The notary also subscribed his name to it. Does the circumstance, that the entry in this case, is not entirely in the hand-writing of the notary, exclude it from the principle of the cases which have been noticed? In the case of Price *v.* Lord Torrington, the entry of the clerk was admitted, because the drayman had signed his name to it. It was not admitted as the entry of the clerk, but of the drayman, and yet the drayman did not draw up the body of the entry, nor any part of it. He only signed his name to it. He being dead, it was received as his memorandum. It is true, that in that case, it was proven to have been usual for the clerk to make the entries, and the drayman to sign them, and yet the evidence would have been equally admissible, upon principle, if it had been shown, that the drayman sometimes made them himself. In this case it is not shown to have been the practice of the clerk to fill up the record, and yet his having done so cannot exclude it, if it was done with the sanction of the notary; for it would then be his act. The witness does not recollect whether he acted in this instance, by the direction of the notary; but we think this may very properly be inferred, from the fact, that the name of the notary, in his own hand-writing, is affixed to it; and the additional circumstance, that the record was kept by him, and found in his possession at his death. In the absence of express proof that the act of his clerk in this instance, was an unauthorised interference, we do not feel at liberty so to regard it. Nor do we feel authorised to presume that it was less the memorandum of the notary. He was here acting in his capacity of a public officer, who was sworn to do his duty, and therefore the law places a confidence in his acts. In the case of Nichols *v.* Webb, the memoranda of the notices and other facts were frequently entered in the books of the notary by his daughter. Yet the memoranda in that case were received as the entries of the notary. In principle, this case does not differ from that.

The judgment of the court below must therefore be affirmed.