FRANCIS O WATTS, Administrator *vs.* BENJAMIN HOWARD, Administrator.

A new trial will be granted where material evidence, of a distinct species from any that was given at the former trial, is newly discovered, and no neglect can be imputed to the party ·in not having been previously prepared with it.

In a suit by or against an administrator, he cannot give in evidence an entry, relating to the matter of the suit, made by his intestate in a memorandum book concerning his own business, in respect to a transaction of a kind concerning which vouchers and evidence of a more satisfactory character are usually preserved, and where such entry is not proved to have been made at the time when it purports to have been made, and is not corroborated by any other evidence.

Where a testator devises his real estate to his executor in trust, among other things, to pay the income thereof to the testator's widow for life, the widow is entitled only to the net income, after deducting taxes, repairs, and the ordinary current expenses attending the estate.

Where an executor, to whom real estate is devised in trust, is authorized by the will to take down any part of the testator's buildings, and to rebuild, to erect additional buildings, and to hire money for the purpose of bettering the trust estate, he may advance his own money for the like purposes, and charge it in his general administration account.

SHAW, C. J. Eleazer Howard died February 17th 1836, having made a will, and appointed his son in law, Abraham Howard, his executor. The executor proved the will, returned an inventory, and settled a first account, consisting of a few items only, on the 24th of April 1837. The inventory exhibited real estate $20,400, and personal $210. No further account was settled by the said Abraham, who died on the 13th of January 1841, after which Benjamin Howard, the appellee, took administration of his estate.

Francis O. Watts was appointed administrator *de bonis non,* with the will annexed, of the said Eleazer Howard. On the 21st of June 1841, Benjamin Howard, as administrator of Abraham, settled the second account of said Abraham Howard, at the probate court, whereupon, after objections made by Watts, administrator *de bonis non* as aforesaid, and after sundry deductions made by the judge of probate from the claims made by said Benjamin Howard, in behalf of his intestate Abraham Howard, against the estate of Eleazer Howard, the sum of $8262·56 was allowed by a decree of that date; from which decree the said Watts appealed. When this appeal came into

this court, an issue was framed, by order of the court, for a trial by jury whether any thing was due from the estate of the said Eleazer Howard to the estate of the said Abraham Howard. On the trial of this issue, a verdict was found in favor of the estate of said Abraham Howard for the sum of $4739, with interest from the 23d of March 1830, which the said Watts, appellant in behalf of the estate of the said Eleazer Howard, moves to set aside, on various grounds; and this is the question to be decided.

The first point to be considered is the motion to set aside the verdict, on the ground of newly discovered evidence. One of the largest items in the account was a debt alleged to be due to Abraham Howard himself, from his testator, on a promissory note amounting originally to $4739, with a considerable accumulation of interest. The form of the charge was that of a payment of this note. But whether it be regarded as a payment by himself, as executor, to himself, in his own right, of which the note is the voucher, or as a debt due on the note, appears to us to be a mere matter of form, which may be made correct according to the real rights of the parties, as they may be established by proof. It appears by the report, that the note was produced at the trial, uncancelled; that there appeared, on the margin of the registry of deeds, the discharge of a mortgage given originally as security for the same note; which, if it stood alone, would be evidence of payment, after the death of the testator Eleazer Howard, and before the death of the executor, Abraham Howard. One hypothesis offered at the trial, to account for this discharge, was, that by the will of Eleazer Howard, the whole of the estate incumbered by this mortgage had been devised to Abraham Howard himself, to hold in fee, upon certain trusts; that he had no longer any interest in keeping the mortgage on foot, as security for the note; and that his purpose was to discharge the incumbrance only. Upon this conflicting evidence, arising from the production of the note, on the one side, and the acknowledgment of satisfaction of the mortgage, on the other, the principal question at the trial was, whether the executor, after the death of his testator, had received actual payment and satisfaction of this note

The appellant, representing the estate of Eleazer, now offers evidence which has a material bearing upon that question. He offers his affidavit, to prove that he had no knowledge of the existence of this evidence at the time of the trial, and that he had no notice of any circumstance to put him on the inquiry ; and the evidence offered is such as strongly to corroborate this statement. The evidence consists mainly of the testimony of two persons, who stood in a near relation to these parties, and who testify to declarations made to them by Abraham Howard. in confidential conversations, and in regard to transactions which, from their nature, it is obvious that those to whom they were mentioned would not be likely to disclose. It is not necessary (and perhaps in this stage of the case hardly proper) to state the evidence, and its bearing upon the question. It appears to us sufficient that it is material, that it is newly discovered, that no neglect can be imputed to the appellant in not having been prepared with it at the trial, and that it is a distinct species of evidence from any given at the trial. *Gardner* v *Mitchell*, 6 Pick. 114.

This view of this point is sufficient to decide the question of granting a new trial. But as several other questions were discussed at the argument, and as they must in all probability arise again, it seems proper to express an opinion on them.

The first question is, whether a memorandum book, offered in evidence by the appellee, was competent evidence upon the issue. It is a small memorandum book, proved to be the handwriting of Abraham Howard, containing sundry entries of transactions relating to his doings as executor, with debits and credits in his account as executor. This book debited the estate of his testator with the amount of his own note for $4739, describing it by its date, with interest computed thereon to the time of such entry ; and this entry bore the same date with the discharge of the mortgage on the registry of deeds. This book was admitted at the trial, not for the purpose of establishing any charge against the estate, but as a fact which, if done at the same time at which the mortgage was discharged, might tend to explain the object and purpose of such discharge But the

court are now of opinion, that this book is not competent evidence for the purpose for which it was offered. It was a private memorandum, kept by the party himself, in regard to his own transactions; and there is no evidence, except from the date of the entry itself, that it was made at the time it purports to have been made. It seems to us to come within no rule by which written memoranda kept by persons now deceased, and not sworn to, are admitted in evidence.

In regard to such memoranda made by deceased persons, in the relation of stewards and agents, where entries of the payment of moneys will tend to charge them with a debt, and so are contrary to their own interest, the rule seems to be that they must have been made by such deceased persons, in the usual and ordinary course of their business, in relation to acts coming within the scope of their authority and duty. The rule is laid down, with its restrictions and modifications, in the case of *Doe* v. *Turford*, 3 Barn. & Adolph. 890. It was held, where it was the usual course for the clerk of an attorney, having given written notice to a tenant to quit, to keep a duplicate, and indorse thereon a minute of his doings, and when other notices taken out at the same time were proved to have been duly served, that such memorandum, after the decease of the clerk, was competent evidence. A similar rule was adopted in *Poole* v. *Dicas*, 1 Bing. N. R. 649, and 1 Scott, 600. The leading cases in this country, on this subject, are *Welsh* v. *Barrett*, 15 Mass. 380; *Nicholls* v. *Webb*, 8 Wheat. 326; and *Augusta* v. *Windsor*, 1 Appleton, 317. See also Greenl. on Ev. §§ 115, 116, 120. The present case comes within no principle on which such memoranda are admitted. It relates to the party's own business; it was not proved to have been made at the time; it was corroborated by no other evidence; and it relates to a transaction of a kind, in respect to which vouchers and evidence of a more satisfactory character are usually preserved.

Another subject was somewhat discussed at the argument, though not very fully. By the will, the whole real estate was devised to the executor in trust, among other things, to pay the

income to the widow during her life. It was stated that the executor had charged to the general account the ordinary expenses of repairs and improvements of the estate, when such charges should have been deducted from the rents and profits, and the net income only paid to the widow. But, in looking at the account, we do not perceive that any such allowance has been made.

We are of opinion that the " income " mentioned in the will must oe considered the net income, after deducting the taxes, repairs, and the ordinary current expenses attending the estate, from the gross receipts for rents. This we understand has been done, in substance, by the account as settled and allowed.

Abraham Howard was both executor and trustee; and it has been repeatedly held, that in such case the character of executor includes the duties of trustee, and that his proceedings in both capacities come within the scope of his executorship, and are embraced in the bond given by him as executor. *Hall* v. *Cushing*, 9 Pick. 395. *Dorr* v. *Wainwright*, 13 Pick. 328 It seems, therefore, that in stating this account it would have been more regular for the executor (and in this case his repre sentative) to have credited his executorship account with all the rents and income of every kind received ; then to have charged the repairs and current expenses, and also all sums paid to the widow as income, pursuant to the will ; then if it had appeared that he had paid to the widow a larger amount than the net income, after deducting expenses, such would have been pay- ments in his own wrong, and could not have been allowed in settlement of the account. But it appears that the accountant proceeded upon a different plan, and neither credited the rents nor charged the payments made to the widow; probably reserving them for a separate account as trustee. This seems to us to be the case, because, from the sum charged for alterations and addi- tions to the real estate, the judge of probate ordered a deduc- tion of $423·43, as sums which should have been debited to the widow, as sums proper to be a charge upon the income, and also $244·94, for deterioration, &c. which, we suppose. is

for the same reason, viz. that they do not properly belong to the account of permanent improvements of the real estate. Probably the result is the same as if the rents had been credited, and the expenses and payments of income been charged in the general account; because we are not aware that any objection was made to this mode of stating the account. Supposing this to be so, then a question arises whether the charge of $1736·90, as allowed to the executor, for alterations and additions to the real estate, was rightfully so allowed. This question does not depend on the point whether an executor can lay out money for the betterment and increase of the real estate, and charge it to the general account, or whether a trustee can lay out his own money, for the increase and betterment of the trust estate, and hold the trust estate bound for it. Here he was authorized, by the terms of the will, to take down and rebuild any part of the buildings, to put up additional buildings, to hire money for the purpose, and for the better improving of the trust estate, and to pledge the same for its repayment. With this full authority over the estate, we think he might advance his own money for the like purpose, and charge it in his general account, and so, it is understood, he did. He purchased and removed a building, purchased materials, and paid for labor, &c., and the charge in question is the charge for such additions and permanent improvements of the real estate, after proper deductions; and, as such, we are of opinion that it is rightfully charged, in the general account of the executor, to the estate.

*Verdict set aside and new trial granted.*

*C. G. Loring & Watts,* for the appellant.

*W. D. Sohie*, for the appellee