GEORGE PORTER & another *vs.* CHARLES C. JUDSON.

The protest of a promissory note, duly authenticated by the signature and official seal of a notary public, and found among his papers after his death, is competent secondary evidence of the acts of the notary, stated therein, respecting presentment, demand and refusal.

A promissory note, dated at Boston, where the maker and each of the indorsers had a domicil when the note was made and when it fell due, was deposited in a bank in Boston for collection: No demand of payment was made of the maker, and no notice given him of the dishonor of the note: In a suit by the holder against the first indorser, it appeared by the protest of a deceased notary, that the notary "went to various places, making diligent inquiry of divers persons, for the promisor; but could not find him, nor any one knowing him, nor any one with funds for the payment of the note; and thereupon left official notice of the default, addressed to the several indorsers, at their respective places of business." *Held,* that the notary had not used that reasonable diligence to ascertain the residence of the maker which would excuse the want of legal notice to him of the dishonor of the note.

SHAW, C. J. This is a suit by the holders against the first indorser of a promissory note, dated at Boston. The plaintiffs reside at Concord, N. H., and they deposited the note in the Shawmut Bank for collection. It being conceded that no demand was made on the maker, at the maturity of the note, the main question is, whether due diligence was used to find him, or

his dwelling or place of business.  Another question is, whether a protest, found amongst the papers of a deceased notary public, was competent evidence.

Taking the last question first, we think that after the death of a notary public, his protest, authenticated in the usual way, by his signature and official seal, is good secondary evidence. It has been frequently so held, not because the protest of a promissory note is necessary, and strictly an official act, so as of itself to be competent evidence, as in the case of a foreign bill of exchange, but because notaries are usually employed for that purpose by holders of notes, and are trustworthy persons conversant with such business, and therefore suitable and proper agents to be so employed; and their written memoranda, after their decease, though not competent evidence in chief, yet from necessity are good secondary evidence, because it is in the usual course of their duty and business to keep such memoranda. *Welsh* v. *Barrett,* 15 Mass. 380.  *Nicholls* v. *Webb,* 8 Wheat. 326. *City Bank* v. *Cutter,* 3 Pick. 414.  *North Bank* v. *Abbot,* 13 Pick. 465.  These decisions, which are quite satisfactory, proceeded on the ground, that a protest of a promissory note for non-payment was not an official act, and so the protest or the record of it could not be regarded as evidence of such an act, in respect of its being official.  But it is worthy of consideration, as confirming the authority of these cases, that by Rev. Sts. *c.* 122, § 16, and by *St.* 1839, *c.* 93, which repealed the former, fees are established for notaries public, including the noting and protesting of promissory notes for non-payment, and for the record of these acts; thus recognizing notaries in these cases as public officers, and their entries and records in some measure as official acts.

Supposing that the protest, or the deceased notary's record, is good secondary evidence, what does it prove?  It is received as secondary evidence, from necessity, because the testimony of the notary cannot be had.  Being a substitute for his testimony, it takes its place and proves precisely what his testimony to the facts contained in the protest would have proved.

It is contended on the part of the plaintiff, that notice to an indorser, that a bill lies under protest, or has been protested, or

is subject to charges of protest, or words to that effect, is good notice of dishonor to the indorser, on the authority of *Gilbert* v. *Dennis,* 3 Met. 495, and that class of cases; and therefore that a protest must be conclusive evidence of dishonor. But this is by no means a sound conclusion. To charge an indorser by a holder, two things are required; first, to prove that the note was presented to the maker at maturity, payment demanded of him, and a neglect or refusal on his part to make payment, all of which for convenience is expressed by the significant figure, " the dishonor of the note;" secondly, that the holder gave seasonable notice of such default to the indorser. These are distinct facts, and must be distinctly proved. Whatever therefore may be the terms of the notice to the indorser, however clear and explicit may be the words in which the fact of the dishonor is expressed, the fact of dishonor, that is of presentment and demand, or an excuse for it, must also be proved. The authorities therefore, which show that notice that a bill has been protested is equivalent to 'notice that it has been dishonored, have no tendency to show that a protest is conclusive proof of dishonor. The protest in the present case proves what it professes to prove, the facts narrated in it, the statement of what the notary has done, respecting the presentment, demand and refusal, or some substitute for them; and the dishonor is a conclusion of fact from the evidence.

Assuming, then, that the protest is evidence of the facts stated in it, we are to take it in connection with the facts agreed. If the plaintiffs, inhabitants of another state, employed the bank to collect the note, and take the proper steps to charge all the parties, and they again employed a notary, the agents must do what the plaintiffs themselves were bound to do, and the liability of the indorser is not enlarged or diminished. They are under the same responsibility, and no more, as if the acts done by the agents had been done by the holders.

It is agreed, that no demand was made upon the maker of the note, and no notice given him; that at the time the note became due, he had a dwelling house in Boston, and a place of business there, as a carpenter; that the indorsers both lived

in Boston; and that though the maker had lived in the coun-
try eight years, he had returned to Boston, and resumed his
domicil here, some weeks before this note was given.  The
presumption therefore is strong, not to say violent, that his
home and place of business were known to the indorsers, the
last of whom indorsed it to the plaintiffs for value.  These
facts are to be taken into consideration in weighing the state
ments of the notary.  He says, in his protest, that at the request
of Davis, cashier of the Shawmut Bank, he went with the note
"to various places, making diligent inquiry of divers persons
for the promisor; but could not find him, nor any one know-
ing him, nor any one with funds for the payment of the note;
and therefore left official notice of the default, addressed to
the several indorsers, at their respective places of business."

From this statement it appears, that the notary knew the
places of business of the indorsers, but it does not appear that
he inquired of them, and the probability is that he did not, be-
cause if he had, the presumption is, that he would have found
the promisor.  The facts stated by the notary in his protest
are of the most general kind, that he inquired of divers persons,
at various places, without specifying either.  In general, cases
depend so much upon particular circumstances, that it is not
often easy to find a precise precedent; but there are several
cases similar in fact and analogous in principle to the present.
Such was the case of *Granite Bank* v. *Ayers*, 16 Pick. 392.
And see, as to the effect of failure on the part of the notary to
inquire of the other parties to the note, *Peirce* v. *Pendar*, 5
Met. 352; as to sufficiently diligent inquiry of parties and others,
*Phipps* v. *Chase*, 6 Met. 491; and as to the duty of the holder
of a note to inform the notary, or bank officer, of whom to
make inquiry, and where the persons to be inquired of might be
found, *Wheeler* v. *Field*, 6 Met. 290.

On the whole case stated, the court are of opinion that no
sufficient evidence is shown of diligent inquiry for the maker, to
excuse a presentment and demand; and that the defendant is
entitled to judgment.          *Judgment for the defendant.*

*W. H. L. Smith*, for the plaintiffs.

*W. R. P. Washburn*, for the defendant.