Hawkins, Justice:
Error from Frankiin Superior Court. Action was brought in the Court below, by Baltzell against Spann? under an attachment for •$1400, and the declaration was in assumpsit, on the following promissory note against Spann, as endorser :—
Apalachicola, Dec’r 3d, 1840.
By the 22d of May, 1842, I promise to pay to the order of L. M. Stone, at the Agency of the Southern Life Insurance and Trust Company Bank, Apalachicola, fourteen hundred dollars, for value received.
JAMES H. CAMPBELL.
Endorsed — L. M. Stone,
JoSIAH S. PATTERSON,
S. Scarborough,
Rich’d C. Spann.
Baltzell sued as the immediate endorsee of Spann. The declaration avers, that at the time the note became due and payable, accord *302 ing to its tenor and effect, it was duly presented for payment at the Agency of the Southern Life Insurance and Trust Company at Apalachicola, but that payment was refused; of all which the defendant . had due notice.
To this declaration the defendant pleaded, first, that the plaintiff ought not to maintain his action to recover any more, or any other kind of money, or a verdict for damages against him, than the sum of fourteen hundred dollars in banlc notes, or bills of the Southern Life Insurance and Trust Company, because that after the making of the note sued on, and before the commencement of this action,-tp wit, on the 3d day of March, 1842, Baltzell, in consideration that Spann promised to pay the note sued on at maturity, punctually and without fail, out of his own funds, promised and agreed to and with said Spann, to receive payment of the said note in the bills or notes of the Southern Life Insurance and Trust,Company. . The plea further avers, that on the day the note became payable, Spann offered and tendered to pay Baltzell the sum of fourteen hundred dollars, in the said Southern Life Insurance and Trust Company bills, but that Baltzell refused to receive the same; that he had always been ready, and still was ready to pay in such bills.
The second plea is substantially the same as the first, as well as the third,, each setting forth a tender, with uncore prist and tout temps prist.
Besides these pleas the general issue is pleaded.
'To the special pleas ther^ was a special demurrer on the following grounds: that the plea was not one of tender, but of accord, but of accord without satisfaction; that it aims to .discharge a note by payment of bills of a bank known to be insolvent, and worth only sixty cents in the dollar at the time of tender; that the proffer of payment, if good as tender, was good without the agreement set forth, and if good as a tender, the bills should have been filed in Court; that the tender should have been made in money, brought into Court and filed with his plea; that the agreement, as stated by defendant, was wholly without consideration moving from defendant to plaintiff. The demurrers to the special pleas were sustained by the Court, and the pleas overruled and the case sent to the jury on the general issue and joinder, and verdict found for plaintiff.
By an inspection of the bill of exceptions in the case, it appears *303 that, after the note sued on was read in evidence, M. P. Ellis was called by the plaintiff, who testified that he presented said note in the manner and at the time stated in the following protest:
TeeeitoRX op Florida, Franklin County.
By this public instrument of protest be it known, that on the 25th day of May, 1842, at the request of Geo. F. Baltzell, the holder of the original note, of which a true copy is hereon endorsed, I, Marshal P, Ellis, a Notary Public, residing in the city of Apalachicola, qualified according to law, went to the office of the Southern Life Insurance and Trust Company, and presenting said note demanded payment thereof from the Cashier, who refused to pay the same — that no funds were deposited for that purpose. Whereupon I, the said Notary, at the request aforesaid, do hereby solemnly and publicly protest the said note, as well against the drawer or maker thereof, as against the endorsers, and all persons who are, or may be concerned therein, for all exchange, re-exchange, damages, costs, charges and interest suffered, or to be suffered for the non-payment of said note. This solemnly done and protested.
Given under my hand and seal at Apalachicola, the day and year first above written.
M. P. ELLIS, Notary Public.
I certify that on the 25th of May, 1842, due notice of the foregoing protest was given to the maker and endorsers of said note, by depositing the notice in the Post Office at Apalachicola, addressed as follows:
L. M. Stone, St. Joseph — ,Josiah S. Patterson, Fort Gaines — S. Scarborough, Fort Gaines — R. C. Spann, Franklin, Alaba., — such being the reputed places of their respective residences.
M. P. ELLIS, Notary Public.
(Endorsed) — Copy. .
Apala., Dec’r 3d, 1840.
By the 22dday of May, 1842,1 promise to pay to the order of L.
M. Stone, at the Agency of the Southern Life Insurance and Trust
Company Bank, at Apalachicola, fourteen hundred dollars, for value received. JAMES H. CAMPBELL.
Endorsed — L. M. Stowe,
Josiah S. Patterson,
S. ScARBOROURH,
Rich’d C. Spann.
*304 The contents of which protest he testified to as being true, — and said witness further said, that he sent notice of non-payment. of said note to said defendant and his co-endorsers, as stated in the certificate attached to said protest. Cross examined. Witness said he had no recollection of any of the facts stated, in said protest, independent of the same. He swears to the presentment for payment, notice to endorsers, refusal to pay, <$zc., because he presumes the acts stated must have occurred, else he would not have certified to their occurrence as a Notary. He recollects no facts beyond the protest. Did not recollect at what hour he made the presentment and demand stated to have been made. It was his custom to present notes at the bank, when they were payable at a bank, between noon and sundown — seldom presented any such before noon — has no recollection of having presented said note more than once. His usual habit, in case of a refusal to pay a note, the payment of which he demanded at the bank, was, to leave the bank immediately on such refusal. — • Had the said note in his possession from the timó it w,as handed him to make demand of payment in the beginning of the day, until he protested it; which he usually did about dark. The notice which he gave to the endorsers, was in the form required by law. Sent the notices by mail, deposited in the Post Office on same day that demand and refusal took place, as stated in said protest.
For the defence, Nathaniel C. Rabbins was sworn, who testified as follows, to wit; He was Agent, or assistant Cashier of the Southern Life Insurance and Trust Company, at Apalachicola, at which Agency said note was payable by the terms thereof; was such agent up to the time at which said bank removed said agency from the city of Apalachicola. The bank did remove said" agency, and his said office of agent ceased on the first of May, 1842. After said agency so ceased to exist, witness still continued to occupy the same office room which he occupied whilst said agency existed, up to the 1st June, 1842. He was in his said office off and on through the day; presumes the office was locked when he was out: kept no particular office hours; did not consider his said room an office; generally closed it in the evening at sun-set; has no knowledge of the said note; (before set out) — has no recollection of having had it in his hands on the 25th day of May, or on any other day. When the said agency was in operation and existence, the doors were generally opened af *305 ter breakfast, and continued so until sun-down, and sometimes until 9 or 10 o’clock, P. M., for the purpose of business. Notes not paid on or before 4 o’clock, were considered over due and were protested. 4 o’clock was the hour at which notes payable at said agency, was considered due. Such was the usage of said bank agency. Would not have refused the money on a note after 4 o’clock, under ordinary circumstances, if the maker had called and offered to pay it. Does not recollect that any such occurrence ever took place ; but supposes it has frequently so happened. Was in Apalachicola and in said office, off and on, until the last of May. Was assistant Cashier, or Agent of the bank at this place.
The defendant asked the Court to instruct the Jury as follows:
1st. That if they find from the evidence that notes payable at the Agency of the Southern Life Insurance and Trust Company, at Apalachicola, were, by the usage and custom established by said agency of said bank, required to be paid on or before 4 o’clock of the last day of grace, or within any fixed hour, they must be satisfied that the note sued on was presented at said agency, on or before 4 o’clock of the 25th day of May, 1842, (that being the last of day grace, allowed by law on said note,) or within the hours so proven to be fixed by said custom, within which notes were required to be paid as aforesaid.
2d. That Campbell, the maker of the said note, had the whole of the banking hours of said bank agency within which notes were by said custom to be paid, to pay said note sued on; and the plaintiff must show that he had the said note at its said place of payment in said note specified, during the whole of said hours on said last day of grace, in the hands of himself or some other person for him, ready to receive payment of, and to deliver up the same.
3d. That the demand made by Ellis, the Notary, was not in law a sufficient compliance with the rule of law governing notes payable at a particular place, and was not such a legal demand of payment of the note sued on as to entitle the plaintiff to recover in this action against the defendant.
4th. That the facts adduced in evidence on the trial of this cause, do not establish such a legal demand of payment of the note sued on, as to entitle the plaintiff to recover of said defendant in this suit;
5th. That the presentment and demand of payment of said note Sued on by the plaintiff, or any one for him, made before the hour at *306 which, by the usage and custom of said agency of said bank as proven, notes payable thereat were considered due and payable, and after which said notes were considered protestable, is not in law a proper demand-to charge the defendant in this suit as the endorser of said note sued on, and to entitle the said plaintiff to recover in this suit.
6th. That upon the evidence the said plaintiff is not entitled to recover of said defendant in this suit.
To give which instructions the Court refused, and for which refusal the defendant excepted.
The Court then charged the Jury:
1st. The Jury must be satisfied from the evidence, that the note sued on was presented by the said plaintiff or his agent, at said agency of said bank, on the day it fell due, at some time during the banking hours of the bank.
2d. If the Notary attended with the note at any hour at which the officers of the Bank were present for the purpose of receiving and paying money, and within the usual hours of doing business, and presented said note and demanded payment thereof, it is sufficient demand to entitle the plaintiff to recover.
3d. When other person than the bank is the holder of the note, it is usual for the maker of the note to deposite the money in the bank to pay a note payable at such bank, and a demand of payment of such note so held, made at any hour within the business hours of such bank, is a sufficient demand.
4th. If a bank, at which a note is so payable, and which note is so holden By another person than such bank, has quit doing business, and a demand is made at the former place of business of said bank of the former Cashier thereof, and who has ceased to be such Cashier, such demand is sufficient in law to entitle the holder of such note to recover of the endorser thereof, and to render the endorser liable thereon.
To which instructions the defendant excepted.
The errors assigned by plaintiff in error, are:
1st. That the Court below erred in giving judgment, sustaining the demurrer of Baltzell to the plea of Spann.
2d. That the Court erred in refusing to instruct the Jury in the manner asked for by the counsel for the plaintiff in error, as appears by the bill of exceptions.
*307 3d. The Court erred in giving to the Jury the instructions in the bill of exceptions set forth.
Without regard to the order of the errors assigned, we will endeav- or, in a general discussion, to meet and dispose of all the points embraced in the assignment of errors, or which otherwise are incident to the case.
It is contended by the plaintiff in error, that the agreement, plead, ed and set forth in his pleas, was binding on the parties thereto, be-ir.g in the nature of an agreement substituted. In the preliminary stage of the discussion, it may be necessary to define the relative positions of Spann and Baltzell, the parties to the suit. Baltzell is the endorsee and holder of the note sued on, and Spann his immediate endorser, liable by his endorsement to all the stipulations and responsibilities of an endorser in blank. The endorsement of a note is not a collateral undertaking for the debt of another, within the meaning of the Statute of Frauds, but is a new .contract between the endorser and endorsee. 1 Hall Rep. 336. 1 Bailey on Bills, 149. Jb. 411. The contract of each endorser therefore, being an independent one, there can be no doubt but that he stands on the same footing as any other contractor, and possesses the same rights and powers as to any alteration, revision, or waiver of his contract of endorsement, by and with the consent of the endorsee. In this case the original contract is sought to be waived by parol agreement between the parties. As a general rule, no verbal agreement between the parties to a written contract, made before or at the time of the execution of such contract, is admissible to vary its terms or to affect its construction. All such verbal agreements are considered as waived by, and merged in the written contract. 3 Met. 489. Chitty on Contracts, 99 — 102. But, in this case, there is an oral agreement set up subsequent to, and before a breach of the original contract.
Lord Denman, in Goss vs. Lord Nugent, 5 Barn. & Adol. 65, lays down the rule thus: “After the agreement is reduced to writing, it is competent to the parties, at any time before breach of it, by a new contract, not in writing, either altogether to waive, dissolve, or annul the former agreement, or in any manner to add to, subtract from, or vary or qualify the terms of it, by a new contract not in writing, which is to be proved partly by the written agreement, and partly by the *308 subsequent verbal terms engrafted upon what will.be thus left of the written agreement.” So, in Chitty on Contracts, 112. 5 Am. ed., we find, “ that, in general, where an obligation is created merely by simple contract, it may, whether reduced to writing or not, be entirely dissolved by subsequent oral agreement.” 13 Pick. 446. 9 Cowen, 115. 3 Starkie, 1047. Buffer Ni. Pri. 152. 1 John. Cases, 22. 6 B. & C. 587.
In these cases of substituted agreement, the plaintiff can always declare on the written contract; and unless defendant can prove performance according to the terms of the contract, or according to the agreement for a substituted performance; the plaintiff would be entitled to judgment. 3 Metcalf, 492. Cuff vs. Penn, 1 M. & S. 21. 9 Cowen, 115.
These oral agreements being considered in the light of new contracts, it is requisite that they be based upon proper consideration, and the authorities shew that they must be made upon some new and valuable consideration, proceeding from the defendant to the plaintiff.
The question now arises, do the pleas in this case shew a case of substituted agreement upon good consideration, and are the pleas so framed in accordance with the artificial rules of pleading, as should have rendered them available to the defendant in the Court below 1 We are of opinion, that a case of substituted agreement, an agreement varied by the act of the parties upon sufficient consideration, has been made out; but that with the pleas of tender of the bills of the Southern Life Insurance and Trust Company, there should have been a proferí in curia. There having been none, the whole of the pleas are bad.
We will examine these propositions in order; and first, as to the new agreement:
Baltzell and Spann agree as follows: that in consideration that Spann promised to pay said note, the subject of the present action, at maturity, punctually and without fail, and out of his own funds, Balt-zell agreed to receive payment of the said note in the bank notes or bills of the Southern Life Insurance and Trust Company. Here, certainly, is a substituted agreement; but to render it valid there must be a new and good consideration. Spann had previously undertaken, in his character of endorser, that, if the note was not paid by Campbell at maturity, upon due demand having been made on *309 Campbell, and upon due and reasonable notice given of such nonpayment to himself, that he, Spann, would pay the same to the en-dorsee or other holder. The promise by Spann to pay at all events, certainly changes a liability contingent and conditional, into one absolute and certain, in fact, from being an endorser he becomes, as it were, the maker of the note. This would certaiiily seem to amount to a new consideration in itself; and besides, such a promise would, at law, amount to a waiver of demand and notice, and although this waiver of demand and notice is not set out in totidem verbis, yet it follows as a consequence and result of the contract, and, therefore, cannot be disregarded by the Court. There is always a certain degree of labor, trouble, and frequently, expense, in making these demands for payment, and giving the requisite notice, in case of a refusal to pay; and the law books afford the best test of the truth of the. assertion, that in all these matters there is frequent uncertainty, and that mistakes are constantly occurring as to the requirements of law., in making demand and giving notice, proving in many instances fatal to the rights of parties. Although a Court may feel itself bou.;fS to notice judicially the insolvency of a banking institution, .as, for in. stance, that of the Life Insurance and Trust Company, yet it cannot be presumed to know the precise value of the bills and liabilities of a bank after its insolvency; for, in such an event, the value of its bills and notes must, necessarily, be fluctuating and uncertain. The Court cannot know whether the notes or bills of the Life Insurance and Trust Company were worth ninety cents, or sixty cents, as alleged and admitted by plaintiff, and it can only ask, whether they were of any value, or entirely worthless?
It is urged that the agreement by Baltzell to receive less than the original amount contracted for, is nudam pactum,; the payment having been agreed to be received in the bills of the Life Insurance and Trust Company. The citation from Chitty on Contracts, by the counsel for the defendant in error, does not seem to sustain the point contended for. It is to this effect: “ that a promise by a creditor to accept less than the full amount of his demand, or to give time for his existing debt, is void; unless there be some new consideration as an additional or different security, or a payment varying from that agreed upon, in respect to its being effected in a manner or at a time more beneficial to the creditor, or unless an uncertain claim be reduced to a *310 certainty. Chitty on Con. 52. This law probably refers to debts, dm; but if not, we think it cannot vary the view we have taken oí the subject, but goes to sustain it.
The certainty of the debt’s being paid at the day it was to become due, may have been deemed by Baltzell a sufficient consideration for agreeing to receive the Life Insurance and Trust bills or notes, and the waiver of demand and notice was certainly advantageous to Balt, zell; and if so in the slightest degree, provided it was a benefit greater than that before enjoyed, the consideration would be sufficient to sustain the oral engagement. Fetch vs. Sutton, 5 East. 231. In this case there was an acceptance of £17 for £50, and after the debt, was due. Lord Ellenborough said, there must be some consideration for the relinquishment of the residue; something collateral, to shew a possibility of benefit to the party relinquishing his further claim, otherwise nudam, pactum. In 6 Cranch, 253, it is laid down, if a creditor offers additional security for less sum than due, consideration is good.
/*So we find in 3 Campbell, 57 — a parol agreement by á creditor to accept part payment of a sum, in satisfaction of the whole debt, will not be binding upon him for want of consideration, although he actually receive such part payment, and give a receipt for the whole debt. But if such part payment be made in a manner more advantageous to the creditor, than that agreed upon previously, as if it be made before the day upon which full payment is due, it operates as a new consideration, and rendered such agreement binding, although it be parol, — citing 2 B. & C. 477. 3 D. & R. 649.
The mere fact, that the consideration was, in this case, inadequate. does not render the contract nudam pactum, for it is not essential that the consideration should be adequate in point of value, for the law cannot decide upon this matter; and in the words of Chitty, “it will not interfere with the facility of contracting, and the free exercise of the will and judgment of the parties, by not allowing them to be sole judges of the benefits to be derived from their bargains; provided, there be no incompetency to contract, and the agreement violate no rule of law.” Chitty on Con. 31.5 Am. ed. So, even equity will not interfere, unless the inadequacy be so great as to shock the moral sense.
As the law will not stop to scrutinize the amount of benefits con *311 ferred upon one party, so neither will it scan the extent of trouble, loss or obligation the other party has subjected himself to; and, “ it is immaterial,” says Mr. Chi tty, “that the detriment or charge thus assumed, is, in fact, of the most trifling description; provided, it be not utterly worthless in fact and in law.” Ib. 32. Spann, no doubt, was at some trouble in the procuring of the Life Insurance and Trust notes. He may hare sustained loss in the re-sale, on Baltzell’s refusing to accept them; and the presumption is, that he paid value for them, whatever that value may have been. If Spann’s engagement had been simply to do that, which by law he was compelled to do, the agreement would have been nudam pactum; but he agrees to pay before Hie time he would have been compelled by law to pay; and this, we have seen, creates a new and valuable consideration, and, as such, renders the contract binding and efHcacious.
The next question, as to the tender being well pleaded, will be discussed:
In 5th Bacon’s Ab. tit. Tender, H. 4, it is laid down as a general rule, if a debt or duty be not discharged by a tender and refusal, the tender must be pleaded with a profert in curia; for, as the debt or duty continues, it is not enough for the party who pleads the tender, to plead a tender and refusal with uncore prist, or with tout temp prisU as the case may require; but he must also bring the money, or other thing which has been tendered, into Court, that the party may, if he please, accept it.
If the thing, which has been tendered, be so heavy that it can not be conveniently brought into Court, it is not necessary to plead a tender with a profert. 2 Rolle. Ab. 524. So in Carley vs. Vance, 17 Mass. R. 392, we find the general rule laid down, that if the debt or duty be not discharged by tender and refusal, the tender must be pleaded with a profert in curia. It is not contended that the debt in this case was discharged by tender and refusal, for the plea is in bar of damages ultra. By the terms of the contract the bills of the Life & Trust Bank are to be substituted for money, and to be considered as cash; and by this waiver of gold and silver, when the bills were tendered, the allegation of tender is clearly supported, and if there had been a profert in curia, the Court would have so decided in compliance with the decision in the case of Warner vs. Mains, 7 John. Rep. 476. In this case there was a covenant to pay three hundred *312 dollars on a certain day, on which the payee covenanted to convey a farm, but before the day it was agreed that the three hundred dollars should be paid and received in bank bills, which were duly tendered at that day. “ It was held by the Court that it was competent to the plaintiff to shew that, before the day of payment, the defendant had agreed to accept bank bills as cash, and had dispensed with the necessity of a tender .-in gold or silver. The tender of bank bills was consequently good at the day, by reason of -the previous waiver.”— This very case is cited by the plaintiff in error to shew that the tender by the agreement of parties was a legal tender, but to have availed him, the profert in curia was indispensable in his plea. We beg leave to cite a case we find in the reports of Massachusetts, which seems strongly in point as to the necessity of bringing the money into Court. This was an action of assumpsit, and the declaration contained five several counts. To'the four first, defendant pleaded non assumpsit, on which issue was joined. In the fifth count the plaintiff alleged a promise to pay seventy dollars in bank notes of the New Hampshire Banks, except the Coos Bank. To this count the defendant pleaded a tender in bar of damages with tout temps prist, and a profert of the bank notes into Court for plaintiff. To this plea, the plaintiff replied non obtulit, on which issue was also joined. Both the issues thus joined having been found for the defendant, the plaintiff called for the bank notes, of which the defendant had made a profert, but it appeared they had never been brought into Court. A motion subsequently was made by plaintiff for judgment non ob-stante veredicto.
The counsel for the defendant {as in this ease) alleged that nothing but money could be brought into Court upon a plea of tender. It was decided by the Court that “judgment be entered for plaintiff in the fifth count, to which the plea of tender was made.”
The payment in Life & Trust Bank bills bears no analogy to that of a payment in specific articles. The bills or notes of banks are generally treated as money in the various commercial or business transactions, and are a good tender if not objected to; and how can a promise to pay or deliver a sum of money in bank bills be considered a contract to deliver specific articles, when they are so little capable of being distinguished or identified ? Besides, if they are to be considered as specific articles, a tender of them at the day and *313 place would have been a satisfaction of the contract, and upon refusal of them by Baltzell the property in them would have been transferred to him. The relation of the parties would have been changed to that of bailor and bailee, trustee and cestui qui trust, and Baltzell would have been obliged to have resorted to the specific articles (bank bills,) and the person who tendered them as the bailee thereof for redress. It is needless to remark how remediless a creditor in such a case would be, and we only pursue the argument (perhaps ad absurdum) for the purpose of showing the consequences of considering bank bills in this case as specific articles.
With these views, we think the tender should have been pleaded with a proferí in curia.
The point which next presents itself is raised by the defendant in error, that the agreement between Spann and Baltzell was void by the statute of frauds of this State.’ Duval 206.
The statute of frauds cannot apply to this new agreement of Balt-zell and Spann. It is not a collateral undertaking of Spann’s, but an absolute promise. Spann had for his object a benefit which he did not before enjoy, and this benefit accruing immediately to himself, that is, in the payment of the note by a less sum than was originally to be paid by him, in case of default of the maker. . If Spann’s object had been to procure a release of the property of Campbell, or benefit to Campbell, exclusive of any selfish consideration, and he had not been a party to the original contract, the contract would be clearly within the statute. So we see in Roberts on frauds, 232, the statute does not apply, if the consideration “ spring out of any new transaction, or move to the party promising upon some fresh and substantive ground of personal concern to himself ” So “ where the original transaction is altered, and a new consideration, moving from the plaintiff*to defendant, takes, place, a promise made by the defendant to the plaintiff will not be within the statute.” 2 Saund. PI. and Ev. 527, citing 2 East. 332, 2 Burr 1886, 3 Esp. 87, 4 Taun. 117.
The English doctrine, as declared in 1 Salkeid 27, would seem to be this: a promise to answer for debt, default, or miscarriage of another for which that other remains liable, must be in writing to satisfy the statute of frauds; contra when the other does not remain liable, 1 Smith’s leading cases, 134.
*314 Under this rule, the statute of frauds cannot apply, for Spann, by virtue of the new agreement, assumes the absolute payment of the debt, whereby Campbell, the maker of the note, is entirely discharged ; and the agreement further shews conclusively that Balt-zell looked to Spann, and not to Campbell, for payment of the note.
In Massachusetts it has been held, that the promise of a party to pay a debt, on which he once has been personally liable, cannot be treated as within the statute, although at the time of making the promise his responsibility had ceased. Hopkins vs. Liswell, 12 Mass. 62.
The New York decisions differ from that cited from Salkeld, and go to the extent, that even if Campbell remained liable after this new agreement, still it would not come within the statute of frauds, fbr they declare that an oral agreement to pay a debt previously subsisting, upon a new and different consideration, is not within the statute, even when the original debt remains. 5 Wendell 235. 10 Wendell 461. 4 Cowen 43§.
' It. will not be necessary to say aught in relation to the argument of counsel for plaintiff in error, as to the question of the pleas being pleaded by way of accord, without satisfaction, it having already been decided they were good as shewing an agreement substituted.
Having disposed of these questions, the only ones remaining relate to the sufficiency and regularity of the demand and notice. It is contended that the promise of Spann to pay at all events rendered! demand and notice unnecessary; but admitting this, if the substituted agreement had been enforced, we cannot permit the defendant in error to avail himself of portions of that agreement, so far as they enure to his benefit, and reject those which tend to his disadvantage. If taken at all, they must be taken altogether, and not detached parts of it. Besides Spann promised to pay only jn Life & Trust bills.— Equity and law forbid any other decision.
We think that the facts as set forth in the protest by Ellis, the Notary, and the protest itselfj were admissible as evidence to prove demand in accordance with the allegation in the declaration. As this opinion may at the first blush appear to conflict with some of the rules of evidence, it may be apposite to the present case to give somewhat at length the reasons which have guided and conducted us to our conclusions.
*315 It has been repeatedly decided in England that the books of a Notary, after his death} were admissible in evidence to prove the dishonor of bills left with the Notary for presentment and demand. In Poole vs. Decas, 1 Bingham, N. C. 649, th'is point was decided by Chief Justice Tindal, who said : ‘iWe think it admissible, on the ground that it was an entry made at the time1 of the transaction, and made in the usual course and routine of business, by' a person who had no interest to mis-state what had occurred.”
■ T.his rule of evidence has received the sanction of the American authorities. Welsh vs. Barret, 15 Mass. 380. Merrell et al. vs. The Ithaca & Oswego R. R. Co. 16 Wendell, 587. 2 Hill N. Y. R. 537. In Nichols vs. Webb, 8 Wheat. 326, there was an entry in the book of a deceased Notary to this effect: “ Endorser duly notified in writing 19 July, 1819, the last day of grace being Sunday the 18th.” Judge Story, in-commenting upon the evidence, says, that being a promissory note, in which the action of a Notary was not necessary, the protest itself was not evidence in chief of the fact-of demand; but from the usage of employing Notaries it may be inferred ‘ that “ the protesting of notes, if not strictly the duty of the Notary, was in conformity to the general practice, and was an employment in which he was usually engaged.”- He goes on further to say: “ We think it a safe principle, that memorandums made by a person in the ordinary .course-of his business, of acts or matters, which his duty in such business requires him to do for others, in case of his death, are admissible evidence of the acts and matters so done. A fortiori, we think the acts of a public officer, like a Notary Public, admissible, although they may not be strictly official, if they are according to the customary business of his office, and is clothed with public authority and confidences”
The Courts in this country would seem to have established another principle, or rather an extension of the principle, as before set forth in relation to the admissibility, as evidence, of the'entries made in the register of the deceased Notary, and it is- this-: that,' when these entries have been made in the usual mode of business, and are duly authenticated by the oath of the party who made them, they are admissible in evidence, though the party making them can remember and testify nothing as to the facts contained in said entries." The paper must be an original one made at the time the' facts contained *316 in it are alleged to have taken place, and confirmed by the oath of the witness that he believes it contains a true statement of the facts. The true criterion appears to be this, as to the admissibility of the entries : whether after the death of the maker of them, they would be admissible; and, if so, when verified by oath of the party who made them they are likewise admissible. Farmers & Mechanics Bank vs. Beraf, 152. 20 Wendell, 72.
The case at bar comes up fully to the foregoing principles. The protest appears to be an original paper, and drawn up at the time of the demand of payment, and Ellis, the Notary, swears that the contents of said protest were true. Upon his cross-examination, however, he said he had no recollection of any of the facts stated in it, independent of the same. He swears to the presentment for payment, notice to endorsers, &c., because he presumes the facts must have occurred, else he would not have certified to their occurrence as a Notary. He recollects no facts beyond the protest.
Evidence very similar to this was admitted in the case of Bullard vs. Wilson. 5 Martin N; S. 196. To prove notice, the Court held “ the parish Judges memorandums of his having given notice of the protest to the defendant, was on the back of the protest, and he de. posed that he had no recollection of giving it, but he had no doubt of his having given it, as he never made such a memorandum without having given the notice.” The entry having been made according to the course of the business of the witness, was admitted by the Court.
It is contended by the counsel for plaintiff in error that this case falls within the rule laid down by this Court, as to the evidence of notice to be given endorsers in the case of Whitaker vs. Morrison-But that case and the one at bar differ in this : the paper exhibited at the trial of the case of Morrison vs. Whitaker was a copy, and not an original instrument, and that it was the habit of the witness to make a memorandum of the notice of pretest on the protest kept by him, and that, that one was lost, and the whole amount of the evidence of the Notary, in that case, was based simply upon his habit of doing business.
There has been a recent decision in the State of New York, which establishes fully and clearly the doctrine as before stated. It is found ■ in the case of the Bank of Munroe vs. Calvin, 2 Hills R. 532. Ac *317 tion of assumpsit on a note, the defence was usury, to rebut which the plaintiff offered the Cashier to prove how the note came to the Bank and was paid ; the offer was to prove, “from memoranda and entries, in the hand-writing of the witness made at the time of the transaction to which they refer, occurred, and while he was Cashier and had charge of the books and correspondence of the Bank, which memoranda and entries the witness would swear he believed w.ere truly and correctly made, although independent of such memoranda and entries, the witness had no recollection of the facts; and even after haxting Ms memory refreshed by their examination, he could not testify to the facts independent of the entries and memoranda.”— The Supreme Court, per Bronson, Judge, after observing that the entries and memoranda were made in the usual course of business, and were verified in the most ample manner, by the witness who made, and whose duty it was to make them, said : “ The question is whether memoranda and entries thus verified should be allowed to speak for themselves 1 I think they should.” See, also, 2 Wendell, 72 — 1 Smith’s leading cases, 228, where the foregoing cases are collected, and the whole question is presented with great clearness and ability by the American editor.
The next question for the consideration of the Court is, Whether the notice given to Spann was sufficient 1 Ellis testifies, that he sent notice of non-payment to the defendant Spann, as stated in the certificate endorsed upon the protest of the note. The certificate states, that due notice of the protest was given to the endorser, Spann, by depositing the notice in the Post Office at Apalachicola, addressed to R. C. Spann, Franklin, Alabama, the reputed place of his abode.
The protest sets forth the demand of the note and refusal to pay, so that by the ordinary intendment of words, it seems to the Court, the evidence of Ellis goes to shew, that his notice contained the substance and facts of the protest, viz.: description of the note, a statement of the demand and refusal to pay; or, in other words, that the note was dishonored. The term, “due notice”, used by the Notary, does not amount to evidence, that proper notice was given. To say so, would be to make the Notary the judge of what is legal notice to fix the endorser. He must state facts; and the. conclusion of law from these facts, is a question of law for the Court, and not for the Notary. 1 Harrington, 10 — Bank of Wilmington & Brandywine vs. Cooper’s *318 Adm’rs. We think, however, that the facts as stated in Ellis’ testimony, are sufficient to enable the Court to declare, that the notice contained sufficient averments to constitute legal notice.
There is no particular form of notice of dishonor of the note necessary. Mr. Story, in his work on Promissory Notes, lays it down, that it should contain, in substance, the following requisites: a description of the note, sufficient to ascertain its identity; the presentment for payment and refusal to pay; and that the holder of the note looks to the person to whom the notice is given, for reimbursement and indemnity. Story on Promissory Notes, s. 348. In section 354, of the same work, however, Judge Story remarks, that, by the rule adopted in the American Courts, “ it is sufficient to state in the notice that the note has not been paid, and, either expressly or by implication, that the holder looks to the endorser,for reimbursement or indemnity.” In the case of the Bank of United States vs. Carneal, 2 Pet. R. 543 — 553, the Court said: “A suggestion has been made at bar, that a letter to the endorser, stating the demand and dishonor of the note, is not sufficient, unless the party sending it also informs the endorser, that he is looked to for payment. But when such notice is sent by the holder, or by his order, it necessarily implies such responsibility over. For what purpose could it be sent ? We know of no rule that requires any formal declaration to be made to this effect. It is sufficient, if it may be reasonably inferred from the nature of the notice.”
It seems that the notice would be good, if it be sufficient to put the party on enquiry, and prepare him to pay it, or to defend himself. Even if there be some uncertainty in the description of the bill or note, if it does not tend to mislead the party, it will be good. 7 Alabama Rep. 212 — citing 2 John. Cases, 337 — 11 Wheat. 431 — 16 East. 105 — Chitty on Bills, 9 Am. Ed. 501. So it has been held, that it need not be stated at whose request the notice was given, or who was the owner of the note. 1 Pick. 401.
JT As to the demand necessary to be proved in this case, we think a sufficient one has been proved. At the day the note fell due, the Notary went to the place, where the note was payable, to wit, at the place previously occupied by the Agency of the Southern Life Insurance and Trust Company. Robbins, the late Agent or Cashier, testifies, that the agency had leen removed from Apalachicola, some *319 weeks previous to the day of the alleged presentment of the note. The removal of the Agency rendered the demand, therefore, impossible at the agency. Proper diligence seemed to have been used,, and we are satisfied that when demand was made at the place of payment of the note, and it was found that the agency had been removed, a sufficient demand had been made.' Of course, if the agency had simply been removed to another house in Apalachicola, a presentment there would have been necessary; but the testimony was, that it had been removed altogether. It is like a case where a note is payable at a particular place, and a demand being made at the place appointed, it is found shut up or deserted. In such an event, it would amount to a refusal to pay, for the demand would be useless and inaudible. 3 Kent, 96. 16 East. 112. If the agency had been continued at Apalachicola there can be little doubt. but that a demand should have been made, within the usual hours. of business, of the agency, as the parties are supposed to have contracted with a view to the customs of the bank; but there certainly can be extant no rules or customs of the agency, when the agency itself has no existence.
If Robbins, the former agent, had remained at the place of the agency, with power from the bank to do business, that fact may have altered the ease; but Robbins testifies, that he did not consider the room formerly occupied as the agency, as an office; that he was agent up to the time of the removal of the agency, when he ceased also to be agent. The fact of Robbins’-being at the place, would have no greater effect than any other person’s being there.
If the note had been made payable generally, and not at a particular place, and the maker had removed, in such case it would have been the duty oí the holder to have made due and diligent search for him, and made presentment, if within the State ; but the case at bar is different. If the note is payable at a particular place, the demand must be made there, because the place is made, part and parcel of the contract; and if, as before stated, the place is found shut up and deserted, it amounts to a refusal to pay. Dickinson vs. Bon, 16 East. 110. 8 Bingham, 2141 Bayley on Bills, 197—241. Story on Prom. Notes, s. 205—227. Chitty on Bills, 399,397,172,173,174.
A question may now arise, whether the allegation contained in the ■declaration, as to presentment of the note, is sustained by the evidence — but it may be laid down as a general principle, that where *320 facts or circumstances exist, which amount to an excuse, or do away with the necessity of a demand, the declaration may be in the usual form, and proof of the facts which dispense with a formal demand, will, in law, be deemed proof of demand. As in the case at bar, rto demand in compliance with the terms of the note could have been made on account of the removal of the agency, and this fact being in evidence; it is a sufficient excuse for the non-presentment, and the allegation of the declaration is sustained.
The American cases go to the extent that the averments of demand and notice, in the declaration on a bill or note, were sufficiently supported by evidence of any thing which render demand and notice unnecessary. Stewart vs. Eden, 2 Caine’s Rep. 121. Norton vs. Lewis, 2 Conn. R. 478. Hosmer, J., said: “ that this mode of declaring, relying on proof of an excuse for, the omission to make demand or give notice, had too frequently been sustained to remain questionable.”
So, when no demand has been made of the maker, on account of his absence in a foreign country, it was held by Van Ness, that an averment of presentment in the common form was sufficient. Cummings vs. Fisher, Anthon N. P. 5. See also City Bank vs. Cutter, 3 Pick. 414. 4 Campbell, 52. Hodge vs. Fillis, 3 Camp. 463. 7 Cowen, 523.
So also the fact, that the maker had absconded and could not be found, may be given in evidence, under the allegation that the note was presented and payment refused. Stewart vs. Eden, 2 Caine’s R. 121. Williams vs. Matthews, 3 Cowen, 252. Taunton Bk. vs. Richardson, 5 Pick. 436.
So a promise to pay after notice, will be received as evidence of notice. Martin vs. Winslow, 2 Mason, 241. 12 Wheat. 183. 9 Porter, 302. As to the forwarding notice of the demand and refusal to pay the note on presentment, Ellis testifies, that on the day of demand of payment and refusal to pay, to wit, on the 25th May, 1842, The deposited the notice in the Post Office at Apalachicola, directed to the defendant Spann, at Franklin, Alabamá, the reputed place of his residence. It is necessary that the endorser of a note should be notified of its dishonor, by depositing the notice in the Post Office, when that is the proper medium of conveyance, and properly addressed to him, and his place of residence proved. By the words, “reputed res *321 idence,” we understand a residence ..as fixed by general reputation, established opinion, or common estimation, or a fact of general notoriety.
It would have been better, no' doubt,- for the Notary to have been in this portion of his testimony, 'more definite and explicit; but we think this allegation as to the residence of .Spann, sufficiently certain. Witnesses frequently, from'over caution, Or perhaps from carelessness, needlessly qüalify their testimony ; and expletives, without any very definite meaning, are frequently introduced, which generally tend to produce embarrassment, and, oftentimes, serious results. ^ "The judgment of the Court below is* affirmed with costs.