THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, *Plaintiff in Error,* v. ALTA M. DENTON, *Defendant in Error.*

## En Banc.

## Opinion Filed February 15, 1927.

1. In an action upon a life insurance policy a plea, that the insured in his application for the policy made an untrue representation that he had never made an application nor submitted to an examination for life insurance upon which a policy had not issued on the plan and premium rate originally applied for, sets up a good defense.

2. A signed application for life insurance, a doctor's physical examination of the applicant, an unfavorable report and a destruction of the application by the applicant or agent through whom it was made constitute proof of the plea mentioned in the first headnote.

3. An applicant for life insurance should exercise toward the company to which he applies for insurance the same degree of good faith which the company is required to exercise toward him.

4. A representation by an applicant for life insurance that he had made no prior application for life insurance in any company is material, and if untrue will vitiate the policy if issued.

5. In the preparation of transcripts of records that are intended for this Court, Rule 11 of the Supreme Court Rules, requires that they should be "clearly and legibly typewritten or printed in black ink." If the rule is not observed the Court may exercise the discretion vested in it to dismiss the cause.

A Writ of Error to the Circuit Court for Putnam County; A. V. Long, Judge.

Judgment reversed.

*Doggett, Christie & Doggett,* for Plaintiff in Error;

*Walton & Dineen,* and *J. C. Calhoun,* for Defendant in Error.

ELLIS, C. J.—This was an action upon two policies of life insurance, each for one thousand dollars, issued by the plaintiff in error upon the life of Fred P. Denton; the beneficiary named in each was the wife of the insured, the defendant in error here. The policies were dated respectively the 17th and 29th of April, 1922.

Denton died on the 23rd day of September in the same year. Mrs. Denton notified the insurance company of the death of her husband and submitted proof of his death. The company refused payment and action was brought upon the policies by Mrs. Denton in June, 1923. There was a verdict and judgment in her favor in the sum of twenty-five hundred and twenty dollars, which included interest and attorneys' fees.

To that judgment the defendant, the Life Insurance Company, took a writ of error.

The case was tried upon the following issues:

First, that Denton in making application for the policies of insurance agreed that they should not take effect unless the first premium on each was paid and the policy received by him during his continuance in good health, but they were delivered to him and he received them while he was affected by tuberculosis of the lungs.

Second, that in his application Denton represented that he had never made an application nor submitted to an examination for life insurance upon which a policy had not issued on the plan and premium rate originally applied for; that the representation was untrue and defendant

was mislead by it; that Denton had submitted to an examination for life insurance and applied to the Penn Mutual Life Insurance Company for life insurance in April of the same year and prior to the date of his application to the defendant Company and the Penn Mutual Company had not issued the policy and upon discovery of the misrepresentation the defendant cancelled the policy and tendered to Mrs. Denton the first premium which had been paid and the interest thereon;

Third, that in his application for the policies of life insurance Denton represented that within the past five years he had consulted only two physicians, once in 1917 for acute indigestion, and in 1918 for inguinal hernia; that the representation was untrue and the defendant was mislead by it and upon discovering that it was untrue cancelled the policy and tendered to Mrs. Denton the first premium and interest thereon.

Three of the five errors assigned are discussed; they present the question of the sufficiency of the evidence to support the verdict.

The affirmative plea of the defendant presenting the issue of a former application by Denton to a life insurance company for life insurance and submission to an examination for that purpose and that the policy was not issued is amply supported by the evidence.

About April 7, 1922, and prior to the application to the defendant Company for insurance, Denton made application, through B. M. Comfort, the agent of the Penn Mutual Life Insurance Company, for insurance in that Company. Denton in company with Comfort went to the office of Dr. Welch, who at that time was connected with the Penn Mutual Company in the capacity of medical examiner in Palatka; Denton was examined by Dr. Welch, the examination was unfavorable, he so reported to Comfort and the

application was not forwarded to the Company, but destroyed.

Dr. Welch said that he made a complete physical examination of Denton; that Denton had incipient tuberculosis, the condition was chronic and that the condition of Mr. Denton then observed by the doctor would continue for a period of six weeks.

Mr. Comfort, the agent through whom the application was made to the defendant Company, was also the agent through whom the application was made to the Penn Mutual Company. His recollection of the transaction related by Dr. Welch is not so clear. There is not in his testimony a single definite statement of fact as to any incident bearing upon the issue. He did not remember the day of the month of April when Mr. Denton made application through him to the defendant Company, but thought it was the 7th or 8th of that month. The application itself shows it to have been made on the 13th. He did not remember whether it was signed by Denton or Mr. Blood, the soliciting agent, before or after it was "filled out." He did "not think" that Mr. Denton was examined by Dr. Welch. He did not recollect whether he went with Mr. Denton to Dr. Welch's office on the 7th or 8th of April, but he had then written Mr. Denton's application for insurance with the Penn Mutual. He did not know when Dr. Hosey examined Denton upon the application to the defendant Company, but he did concede the fact that the application was made on the 13th, after hearing the evidence read.

He did state, however, that he destroyed the application for insurance in the Penn Mutual Company upon leaving Dr. Welch's office and called "Mr. Denton's attention to the fact that he was tearing it up." He "rather" thought that Dr. Welch told him some days later that "he (Dr.

Welch) could not pass him (Denton) and that was the reason he did not examine him''; that to the best of his ''knowledge and recollection'' he obtained the above information from Dr. Welch ''some days'' after the visit to the doctor's office with Denton and after the witness had submitted Denton's application to the defendant Company.

The issue presented by the plea was that the applicant represented that he had never made an application nor submitted to an examination for life insurance upon which a policy had not issued on the plan and premium rate originally applied for.

We are of the opinion that the evidence fully sustains this plea.

Question Number Fourteen of the application is as folfols: ''14. I have never made an application nor submitted to an examination for life insuance upon which a policy has not been issued on the plan and premium rate originally applied for, except to the following companies or associations. If none, so state.'' To which the anwer ''none'' was written.

There can be no doubt that an applicant for life insurance should exercise toward the company to which he applies for it the same degree of good faith which the company is required to exercise toward him and which he rightly expects. See Mutual Life Ins. Co. of N. Y. v. Hilton-Green, 241 U. S. 613, 60 L. Ed. 1202, 36 Sup. Ct. Rep. 676.

The representation that the applicant had made no prior application for insurance in any company was a material one. A statement that no policy had been issued if an application had been made would obviously have placed the Company upon inquiry which would have lead to the disclosure of the facts appearing in this case. The

technical contention that the application is not completed until received at the general office has no force of virtue in it. The information which the Company sought by the question and which it had a right to receive from the applicant in full without qualification, abatement or deception, fully and in good faith; was: Had the applicant through the usual channels of securing life insurance, or directly to any company, theretofore applied for insurance and was the insurance obtained.

Statement Number Fourteen in the application required the fullest disclosure by the applicant of the circumstances of his first effort to secure life insurance. If he had answered as he should have answered the Company would have been put on notice and subsequent investigation would have revealed the facts related by Dr. Welch; at least the Company could have obtained the statement of that physician. Nor do we think there is any force in the position that the knowledge of the witness Comfort, if he had any, was a waiver by the Company of the warranty. First, because there was no issue of that kind; second, because according to the testimony of the witness he was very doubtful of the possession by him of any knowledge whatsoever upon the subject. The applicant knew he was required to disclose the whole truth. He knew that he had applied for insurance in the Penn Mutual Company a few days before, that he went to Dr. Welch's office to be examined for life insurance and that upon leaving the office the application was destroyed by Comfort in the applicant's presence.

It would seem to be unnecessary to cite authorities in support of the proposition that the disclosure sought by the question was as to a material fact necessary to be ascertained to enable the Company adequately to estimate the nature of the risk in the event it should, in view of all

the facts, issue the policy and that an untrue answer would vitiate the policy. See 1 Bacon, Life and Accident Insurance (4 Ed.) p. 564 and authorities cited; 14 R. C. L. 1080; Aetna Life Ins. Co. v. Moore, 231 U. S. 543, 56 L. Ed. 356, 34 Sup. Ct. Rep. 186; Fletcher v. Bankers' Life Ins. Co. of City of N. Y., 119 N. Y. S. 801, 135 App. Div. 295; Edington v. Aetna Life Ins. Co., 77 N. Y. 564; Security Mutual Life Insurance Company v. Webb, 45 C. C. A. 648, 106 Fed. 808, 55 L. R. A. 122; 37 C. J. 467.

Before concluding we wish briefly to call the attention of counsel for the plaintiff in error to Rule 11 of the Supreme Court Rules which requires the records that are submitted to this Court to be ''clearly and legibly type-written or printed in black ink.''

The reason for the rule is apparent. Illegible writing or indistinct printing, especially in colors, is most trying upon the eyes of a reader, so the rule was made to relieve the members of this Court from the eye strain produced by imperfectly printed or written records.

We earnestly hope that the members of the bar will not depart from the requirements of that rule and by strictly observing its provisions help to render the task of becoming informed of the contents of the many records which come here less difficult and less precarious to the eyesight.

We shall require the plaintiff in error in this case to pay the entire costs of these appellate proceedings.

The judgment is reversed with costs to be assessed against the plaintiff in error.

WHITFIED, TERRELL, BROWN AND BUFORD, J. J., concur.

STRUM, J., dissents.