## NEW YORK LIFE INS. CO. v. BULLOCK et al.

### No. 428.

District Court, S. D. Florida, Jacksonville Division.

June 27, 1932.

Doggett, McCollum, Howell & Doggett, of Jacksonville, Fla., for plaintiff.

Russell L. Frink, of Jacksonville, Fla., for defendants.

STRUM, District Judge.

This is a suit in equity to cancel a life insurance policy, carrying disability benefits, issued by the plaintiff to the defendant Finley S. Bullock; cancellation being sought because of material misrepresentations made by the insured in his application therefor.

The application was made and signed on May 14, 1924. It contained provisions that statements therein made should be regarded as representations, and not warranties, and that said statements were full, complete, and true, and that the insurance company, believing them to be true, might rely and act upon them. The application also contains the following questions to and answers by the applicant:

"Q. Have you consulted a physician for, or suffered from, any ailment or disease of * * ÷ the eye? A. No.

"Q. What physicians, if any, not mentioned above have you consulted or been examined or treated by within the past five years? A. None."

Plaintiff asserts the foregoing statements to be material and false.

The only physicians elsewhere referred to in the answers were Dr. Pennington, whom defendant stated had removed his tonsils in 1921, and Dr. R. A. Barnett, whom defendant said had treated him for "flu" in 1918. At no place in said application did the applicant disclose that he had suffered from, or had been examined or treated by any physician for, any ailment or disease of his eyes.

In January, 1926, the insured was seriously injured in an automobile accident, receiving violent blows across both eyes, resulting in permanent blindness. The insured submitted claim for disability benefits under the policy. Two attending physicians' statements were submitted by the insured in support of his application for disability benefits, upon one of which, signed by defendant's physician Dr. Black, appears the following: "Left eyesight was lost in 1921." Upon receipt of this information, plaintiff entered upon an investigation which resulted in this suit for cancellation.

To support its claim that plaintiff had lost the sight of his left eye as early as 1921, three years before his application, plaintiff introduced in evidence, over defendant's objection, a physician's history card purporting to show the diagnosis and treatment of defendant's eyes by Dr. Adams from December 20, 1920 to October 11, 1921, which card purports to disclose that during the period stated the defendant's left eye was affected with neuro-retinitis, for which Dr. Adams treated him. Dr. Adams was dead when the testimony was taken. Plaintiff also undertook to introduce, over defendant's ob-

jection, correspondence passing between Drs. Black and Harkness, who were defendant's attending physicians, and Mr. Bell, who was secretary of plaintiff's claim committee; also correspondence between Mr. Bell and Dr. Adams, during the latter's lifetime, relating to the condition of defendant's eyes during the period of Dr. Adams' treatment. Dr. Adams' letter purports to show that during the period of his treatment defendant's left eye grew progressively worse, until in October, 1921, defendant was practically blind in that eye.

■ Dr. Adams' history card, in so far as it relates to his diagnosis and treatment of the defendant, is unquestionably admissible in evidence when properly identified. Adler v. New York Life Ins. Co. (C. C. A.) 33 F.(2d) 827; Nicholls v. Webb, 8 Wheat. 326, 5 L. Ed. 628; Spann v. Baltzell, 1 Fla. 301, 321, 46 Am. Dec. 346; 2 Wigmore on Evidence, § 1521 et seq. See, also, note 44 L. R. A. 846.

■ Notwithstanding the admissibility of this history card, however, there appears upon its face evidence of spoliation as to the name and age of the person to whom it referred, which is so grave as to rob the card of any probative force. Though the presumption ordinarily is that an alteration or spoliation was made before or at the time of the execution of an instrument (see Little v. Herndon, 10 Wall. 26, 19 L. Ed. 878; Hanrick v. Patrick, 119 U. S. 156, 7 S. Ct. 147, 30 L. Ed. 396; Tharp v. Jamison, 154 Iowa, 77, 134 N. W. 583, 39 L. R. A. [N. S.] 100), the physical appearance of the alteration here involved is such as to destroy the probative force of the card, even though it is identified as a part of Dr. Adams' usual office records, and though it is supported, as to the innocence of the spoliation, by the testimony of a handwriting expert in whom the court feels confidence. The physical appearance of the card itself raises in the court's mind a doubt so serious that, though considered, the card is rejected as without probative force.

■ As to the correspondence passing between the doctors and the insurance company, no argument nor citation of authority would seem to be necessary to demonstrate that it is hearsay, because it does not bind the defendant as an admission, but is res inter alios acta; no opportunity being afforded the defendant to cross-examine the doctors as to the matters contained in the letters.

■ As to the notation, "Left eyesight was lost in 1921," however, which appears on the attending physician's statement submitted at the instance of the defendant himself and as a part of his proof of disability, no reason is perceived why this statement should not be regarded as an admission of the defendant, though it would be subject to explanatory testimony which might conceivably destroy its effect as an admission, as for mistake or the like. If the attending physician's statement, thus submitted, is competent to prove the existence of defendant's disabilities, it is competent to prove when he became disabled. Mutual Benefit Life Ins. Co. v. Newton, 22 Wall. 32, 22 L. Ed. 793; Mutual Benefit Life Ins. Co. v. Higginbotham, 95 U. S. 380, 24 L. Ed. 499; Hanover Fire Ins. Co. v. Lewis, 28 Fla. 209, text 240, 10 So. 297. It is unnecessary, however, to rest the decision upon this proof alone.

The defendant himself testified that about 1921 he was examined for admission to the Navy, and was rejected because one eye was found to be weak, though his eyes were not troubling him to his knowledge; that he then consulted the Dr. Adams hereinabove mentioned for the purpose of correcting the eye trouble; that Dr. Adams told him his right eye was sound, and that he had more than 50 per cent. vision in his left eye. Dr. Adams fitted him with glasses, told him to have his tonsils removed (which he later did), and that this would correct the trouble with his left eye. Defendant further testified that Dr. Adams did not indicate to him that his eye trouble was permanent and could not be remedied with treatment, but to the contrary stated that with the prescribed treatment his vision would become normal again. Defendant further testified that as a result of the treatment his eyes recovered and gave him no further trouble until this accident.

Thus the insured himself admitted his consultation with and treatment by Dr. Adams for an eye ailment within five years of the date upon which his application for this policy was made. The insured contends that in view of Dr. Adams' diagnosis, and his prognosis of recovery, coupled with the fulfillment of such prognosis (according to the insured's testimony), that insured's failure to disclose in his application his treatment by Dr. Adams was not material to the risk, and, therefore, not a misrepresentation. In this view, however, the court does not concur.

■ "Beyond doubt, an applicant for insurance should exercise toward the company the same good faith which may be rightly de-

manded of it. The relationship demands fair dealing by both parties." Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 680, 60 L. Ed. 1202; Mutual Life Ins. Co. v. Denton, 93 Fla. 276, 112 So. 53. Though an innocent mistake of fact on the part of an applicant may not vitiate the resulting policy of insurance, nevertheless, a failure to disclose material matters inquired about by the company, and known to the applicant, will invalidate the policy without proof of any actual, conscious design on the part of the applicant to defraud. Pacific Mutual v. Cunningham (D. C.) 54 F.(2d) 927; New York Life Ins. Co. v. Cohen (C. C. A.) 57 F.(2d) 494; Fountain v. Mutual L. Ins. Co. (C. C. A.) 55 F.(2d) 120.

Whether or not the applicant had consulted a physician for any ailment or disease of the eye within five years was the subject of a special inquiry at the time of his examination, to say nothing of the additional general question as to other physicians whom he had consulted or by whom he had been examined and treated within the past five years.

█ If the question propounded to the applicant tends to elicit a reply which would naturally and reasonably influence the judgment of the underwriter in making the contract of insurance, or in estimating the degree or character of the risk, or in fixing the rate of premium, the question is material. Union Indem. Co. v. Dodd (C. C. A.) 21 F. (2d) 709, 55 A. L. R. 735; Jeffries v. Insurance Company, 22 Wall. 47, 22 L. Ed. 833; Gardner v. North State Ins. Co., 163 N. C. 367, 79 S. E. 806, 48 L. R. A. (N. S.) 714, Ann. Cas. 1915B, 652.

It is beyond doubt that the applicant's answers to these questions were untrue. Had the defendant properly replied thereto, the insurance company would have had the means of making further inquiries.

The question of consultation of a physician has no relation to the patient's condition of health, nor has it reference to the necessity or reason for the consultation, unless the question is so limited. The general question, such as appears in this policy, is wholly distinct from the existence of disease, and means exactly what it says. Besides which, this applicant was specifically asked whether he had consulted a physician for any ailment or disease of the eye. Certainly such a consultation would be material to the risk. By answering both these questions in the negative, this applicant wrongfully withheld from the insurance company the means of making further investigation. Aetna Life Ins. Co. v. Bolding (C. C. A. 5) 57 F.(2d) 626; New York Life Ins. Co. v. Hunter (C. C. A.) 32 F.(2d) 173; Metropolitan Life v. Brubaker, 78 Kan. 146, 96 P. 62, 18 L. R. A. (N. S.) 362, 130 Am. St. Rep. 356, 16 Ann. Cas. 267; Hubbard v. Mutual Life Asso. (C. C. A.) 100 F. 719; Mutual Life Ins. Co. v. Denton, 93 Fla. 276, 112 So. 53; Cobb v. Mutual Ben. Asso., 153 Mass. 176, 26 N. E. 230, 10 L. R. A. 666, 25 Am. St. Rep. 619; Bonewell v. North American Ins. Co., 160 Mich. 137, 125 N. W. 59; Bellestri-Fontana v. New York Life Ins. Co., 234 Mich. 424, 208 N. W. 427; Stipcich v. Metropolitan Life Ins. Co., 277 U. S. 311, 48 S. Ct. 512, 72 L. Ed. 895; New York Life Ins. Co. v. Cohen (C. C. A.) 57 F.(2d) 494; Raives v. Raives (C. C. A.) 54 F.(2d) 267.

█ Because of the false answers made by the defendant in his application as to his consultation with physicians, and entirely independent of the condition in fact of his eyesight, plaintiff is entitled to cancellation.

Decree accordingly.