278 So.2d 724

**Robert N. PRATT**

v.

**STATE.**

**6 Div. 302.**

Court of Criminal Appeals of Alabama.

March 20, 1973.

Rehearing Denied April 17, 1973.

276

McCollough, McCollough & Callahan, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

PER CURIAM.

Appellee filed an information in the Circuit of Jefferson County charging the defendant with unlawfully practicing law after having previously surrendered his license to practice. A jury convicted him of the offense charged in the information and fined him $400.00. The trial judge sentenced him to imprisonment in the county jail for a term of six months. The judge suspended the sentence and put him on probation for eighteen months. Defendant here appeals from the final judgment.

The trial in the Circuit Court followed defendant's appeal from a judgment in the Criminal Court of Jefferson County wherein he was adjudged guilty of the offense charged in the information. The trial in the Circuit Court was de novo.

The information, omitting the caption and copy of the divorce, reads as follows:

"The State of Alabama, by its District Attorney, complains of Robert N. Pratt, whose name is otherwise unknown, That, within twelve months before the commencement of this prosecution, Robert N. Pratt did, in said county, unlawfully engage in the practice of law, after having previously surrendered his license to practice law, in this, that on to-wit: September 15, 1969, he did meet with one Sherry Morris at the parking lot of Miller's Discount Store at the Westgate

Shopping Center on U. S. Highway 78 West in Jefferson County, Alabama, and did then and there agree to obtain for the Morrises a divorce in consideration of payment to Robert N. Pratt the sum of One Hundred Sixty and no/100 Dollars, which said sum was paid and receipt given to Sherry Morris for said amount, signed by R. N. Pratt.

"The State of Alabama, by its District Attorney, further complains that sometime shortly after February 5, 1970, Sherry Morris received in the mail, a divorce decree in words and figures as follows:"

■ We think the demurrer to the information, with its several grounds, is without merit. The information charges the offense with such a degree of certainty and clarity as to put the defendant on notice of the nature and cause of the accusation against him. We do not think he could have had a reasonable doubt as to what he was called upon to defend. Rogers v. State, 12 Ala.App. 196, 199, 67 So. 781. It meets the requirements of Tit. 15, § 363, Recompiled Code of Alabama, 1958.

Two grounds of the demurrer are as follows:

"For that said complaint does not sufficiently charge the defendant with conduct proscribed by Title 46, Section 42, of the Code."

"For that it does not appear from the face of the complaint whether the defendant is being prosecuted for a violation of Section 31, or Section 42, of Title 46 of the Code of Alabama."

Tit. 46, § 31, Recompiled Code of Alabama, 1958, to which the demurrer refers, reads as follows:

"If any person shall, without having become duly licensed to practice, or whose license to practice shall have expired either by disbarment, failure to pay his license fee within thirty days after

the day it becomes due, or otherwise, practice or assume to act or hold himself out to the public as a person qualified to practice or carry on the calling of a lawyer, he shall be guilty of a misdemeanor and fined not to exceed five hundred dollars, or be imprisoned for a period not to exceed six months, or both."

Tit. 46, § 42, Code, supra, defines in sub-paragraphs (a), (b) and (c) certain acts that constitute the practice of law. It also provides that " . . . Any person, firm or corporation who is not a regularly licensed attorney who does an act defined in this *article* to be an act of practicing law, is guilty of a misdemeanor, and on conviction must be punished as provided by law. . . ." (Emphasis supplied.) The punishment provided by law is found in Tit. 15, § 327, Code, supra.

It is to be noted that Tit. 46, § 42, Code, supra, is copied from General Acts, 1949, p. 194, approved January 20, 1949, which amended Tit. 46, § 42, Code of Alabama, 1940. The amendment is the last legislative expression fixing punishment for the misdemeanor mentioned in § 31, supra, which is included in Article, Chapter 3, along with § 42, supra. In other words, the amendatory Act of 1949, uses the word "article" which includes § 31, supra. The punishment provided in said § 31 is superseded by the punishment provided in the amendatory Act of 1949, which appears in Tit. 46, § 42, Recompiled Code of 1958, and in General Acts, supra.

■ There is no conflict between §§ 31 and 42, supra, in their application to the transaction set forth in the information. Only one transaction of illegal practice is charged ·in the information. This transaction is prohibited by both §§ 31 and 42, supra, with punishment therefor fixed by the amendatory Act of 1949, supra. We fail to see that the defendant was not fully informed of the transaction for which he was being prosecuted. There was no occasion for an election on the part of the State between the two prohibitory laws.

The only difference is that § 42 is more definitive than § 31. The information is sufficiently definitive of the involved transaction to meet the requirements of the law. In Brooms v. State, 197 Ala. 419, 73 So. 35(10), the Supreme Court of Alabama observed as follows:

" ' . . . The court will not exercise the power to compel an election unless it appears either from the indictment or the evidence that an attempt is made to convict the accused of two or more offenses growing out of separate and distinct transactions. Mayo v. State, 30 Ala. 32; Wooster v. State, 55 Ala. 217.' . . ."

Both the demurrer and the motion to require the State to elect were properly overruled.

We now reach the merits of the case. It is stipulated and agreed between the counsel for the State and the attorneys representing the defendant that the latter did voluntarily surrender his license to practice law. The surrender was in 1964. It was also agreed that the license to practice law "is today the same as it was in 1964 based upon the voluntary surrender."

The transaction here charged in the information took place in September, 1969. One Sherry Parker, now Mrs. Sherry Morris, and her husband, Peter Morris, contacted defendant early in September, 1969, in his home, whereat the question of a divorce between Mr. and Mrs. Morris was discussed. Defendant advised and counseled them to wait awhile and see if they could not reconcile their differences and preserve their marriage. This they agreed to do.

The attempted reconciliation failed. A divorce followed. We here state Mrs. Morris married a Mr. Parker, while Mr. Morris married a niece of defendant. To avoid confusion, we will hereafter refer to Mrs. Parker as Mrs. Morris.

Mrs. Morris by appointment met the defendant at Westgate Shopping Center, on

Highway 78, in Jefferson County, on September 15, 1959, at which time she paid the defendant the sum of $160.00 in cash, for which she obtained defendant's receipt which defendant admits. The receipt is in evidence. The money was paid to cover the fee and expenses of obtaining a divorce. The husband, Peter Morris, did not make any contribution to the payment. A divorce decree, dated February 5, 1970, reached Mrs. Morris by mail. Mrs. Morris also testified that at the time she paid the $160.00 she signed some divorce papers that Mr. Pratt handed to her. The State thereupon re-offered in evidence Exhibit No. 3, which is the divorce paper Mrs. Morris testified she signed at the time she paid the $160.00. This exhibit does not appear in the record. The court reporter certified that the exhibit was not located within the possession of the court; that counsel for the parties stipulated and agreed that they would forward the exhibit. The exhibit has not reached this court.

Mrs. Morris testified about meeting the defendant at his home at another time prior to the divorce at which time she and her husband, who was present, informed the defendant about an agreement she and her husband had reached about dividing their personal property. Defendant made notes about the division. Mrs. Morris denied that she knew an attorney by the name of Williams and said that she never heard his name mentioned in her contacts with defendant with respect to the divorce.

The defendant admitted that Mr. and Mrs. Morris came to see him about a divorce; that he received the $160.00 which Mrs. Morris testified she paid him. He contended in his evidence that it was understood and agreed that Mr. Williams, an attorney, was to handle the proceedings to get the divorce; that he informed Mr. and Mrs. Morris that he could not practice law; hence, he would turn over the data and money to Mr. Williams and that Mr. Williams was to process the divorce proceedings to a conclusion.

Mr. Morris testified as a witness for defendant. The witness stated that it was understood between Mrs. Morris and himself that Mr. Williams was to perform the legal services necessary to get the divorce and that the defendant could not serve as an attorney in the proceedings.

The Chancellor, Judge Barber, who granted the divorce admitted that he was hazy as to what attorney represented the complainant, Mrs. Morris, in the divorce proceedings, but he was sure Mr. Williams presented the divorce proceedings to him for judicial action.

The Chancellor, over the objection of defendant and an adverse ruling of the trial court, testified that the court file relating to the divorce was resubmitted to him on July 13, 1970; that he affirmed the original decree of divorce. It appears that the witnesses in the case did not appear before a commissioner who had certified the evidence. The Chancellor did not remember the attorneys who appeared in the supplemental proceedings to affirm the original decree.

■ The original decree of divorce was discussed. At no time did we agree to ab pear before the Commissioner. The supplemental proceedings were filed to perfect the original decree. The information alleges that defendant agreed to obtain a divorce for the Morrises for a stated consideration. The supplemental proceedings were admissible to show performance of the alleged agreement with defendant to obtain the divorce—one that was valid.

Exhibit No. 5, offered by the State and admitted in evidence over the objection of the defendant, is not in the record or before this Court. The exhibit was offered in connection with the testimony of Mr. Frank Bainbridge, Chairman of the Birmingham Bar Association in 1970. The court reporter certified that the exhibit was not located in possession of the court and that counsel agreed and stipulated that the exhibit would be forwarded under sep-

arate cover. The exhibit has not reached this Court. We cannot consider the relevancy of the exhibit.

Defendant filed and presented to the nisi prius court his motion for a new trial. The motion, containing thirty-nine grounds, was regularly continued and heard by the court. Oral evidence was taken with respect to grounds 24 and 27, inclusive, which in effect assert that the jury returned a quotient to which they bound themselves by agreement.

The evidence of the jury foreman shows that the jury members were in disagreement as to the amount of the fine, although in agreement as to the guilt of the defendant. Suggestion was made and followed that the amount of the fine determined by each juror be listed and the total divided by twelve. The foreman did the listing on a piece of paper which was found in the jury room after the verdict. The total was divided by twelve.

The foreman testified that at no time prior to the listing and the division did the jury "agree prior to settling on any result," including taking the average. The only reason we made the average, somebody said, 'What is the average?' and it was discussed. At no time did we agree to ab de [sic] by the average of any other man's."

The piece of paper picked up in the jury room right after the verdict was rendered to which we have made reference, supra, marked Exhibit A, raises a reasonable presumption that the verdict was a gambling or quotient verdict. International Agri. Cor. v. Abercrombie, 184 Ala. 244, 63 So. 549, 49 L.R.A.,N.S., 415; George's Restaurant v. Dukes, 216 Ala. 239, 112 So. 53.

■ Evidence of the jurors on a motion for a new trial is admissible to sustain the verdict. George's Restaurant v. Dukes, supra. The evidence of the foreman tended to sustain the verdict and overcome the presumption of a quotient verdict. We will not charge the trial judge who heard the motion with error in overruling the motion.

■ At the conclusion of the evidence on the motion, the defendant moved the court to continue the hearing to the end that the defendant be given an opportunity to interview "various jurors" that counsel had not had the opportunity to do. The court denied the continuance. There was no error in such denial. Granting or refusing the continuance was within the sound discretion of the court. Steele v. Gill, 283 Ala. 364, 217 So.2d 75.

There was sufficient evidence adduced from which the jury could conclude beyond a reasonable doubt, as they did, that the defendant was guilty as charged in the information. A lengthy delineation of the evidence would serve no useful purpose. Suffice it to say that the State's evidence tended to show that the defendant accepted Mrs. Morris's employment to get her divorce from her husband, accepted $160.00 for such services, and proceeded with the case to a conclusion of divorcement.

The defendant's evidence contradicted such employment and tended to show that he was merely accommodating Mrs. Morris, that he informed her he could not practice law, and that he turned the case over to another lawyer, Mr. Williams, who handled the transaction to a conclusion.

■ The jury heard all the evidence and resolved the conflicts against defendant. We will not disturb the verdict.

We think the judgment of guilty and the fixing of the punishment should be and it is

Affirmed.

All the Judges concur.